Kenneth D. LEE and Norma
B. Lee, Appellants,

v.

Jorge A. GUTIERREZ, Liquidating Agent for Rio Grande Savings and Loan Association, and Rio Grande Savings and Loan Association, Appellees.

No. 3–93–183–CV.

Court of Appeals of Texas,
Austin.

Jan. 12, 1994.

Rehearing Overruled March 2, 1994.

William L. Morrow, Harlingen, for appellants.

John B. McFarland, Graves, Dougherty, Hearon & Moody, Austin, for appellees.

Before POWERS, JONES and KIDD, JJ.

KIDD, Justice.

This case is a product of the savings and loan crisis of the late 1980s. Appellants Kenneth D. Lee and Norma B. Lee are representatives of the class of Individual Retirement Account ("IRA") depositors at the failed Rio Grande Savings and Loan Association. The IRA depositors brought a class-action suit against Rio Grande and Jorge A. Gutierrez, the state-appointed liquidating agent (collectively "Rio Grande"), contending that as IRA depositors, they were entitled to priority over other Rio Grande depositors in the institution's liquidation and should receive 100% reimbursement for the funds in their IRA accounts. The district court rendered final judgment in favor of Rio Grande, determining that the IRA depositors had the same priority in the distribution of liquidation proceeds as Rio Grande's other depositors. We will affirm.

## BACKGROUND

The facts of this case are not in dispute. Rio Grande was a state-chartered savings and loan association located in Harlingen, Texas. In April 1988, the Texas Savings and Loan Department declared Rio Grande insolvent and appointed Jorge Gutierrez as its liquidating agent. *See* Savings and Loan Act, Tex.Rev.Civ.Stat.Ann. art. 852a, § 8.09(b) (West Supp.1993). The Savings and Loan Act requires that the liquidating agent liquidate the remaining assets of an insolvent savings and loan and distribute the proceeds to the institution's depositors and other creditors according to the priority set forth in the act. Tex.Rev.Civ.Stat.Ann. art. 852a, § 8.09(c), (g) (West Supp.1993). Mr. Gutierrez determined that Rio Grande had insufficient assets to repay 100% of its deposit accounts. Rio Grande was at the time the only savings and loan in Texas whose accounts were not insured by the Federal Savings and Loan Insurance Corporation.

During the liquidation, a dispute arose between Gutierrez and some of Rio Grande's IRA depositors. Gutierrez had approved the IRA depositors' claims but had assigned them the same priority in the liquidation as other depositors. The IRA depositors contended that their claims were entitled to

special priority because their IRAs were held as trust accounts, and thus constituted "special deposits." Of Rio Grande's 6,300 depositors, approximately 617 were IRA accounts, representing $3.9 million of Rio Grande's $75 million in total book deposits. A group of Rio Grande's IRA depositors, among them Kenneth and Norma Lee, filed a class action lawsuit against Rio Grande and Gutierrez in the United States District Court for the Southern District of Texas in Brownsville. The IRA depositors sought a declaration that the funds in their IRA accounts were trust funds and therefore entitled to priority over other Rio Grande deposits. The IRA depositors' suit also alleged that Gutierrez's decision on their claims had deprived them of their property under color of law and was made without due process, in violation of the Federal Civil Rights Act. *See* 42 U.S.C.A. § 1983 (1981).

While the federal suit was pending, the Lees and other IRA depositors filed suit in Travis County district court, asserting the same causes of action as in their federal suit, but not as a class action. Rio Grande responded with both a motion to designate the class of IRA depositors and a counterclaim for a declaratory judgment that the IRAs were general rather than special deposits, and therefore not entitled to special priority. *See* Uniform Declaratory Judgments Act, Tex.Civ.Prac. & Rem.Code Ann. §§ 37.001–37.011 (West 1986 & Supp.1993). In addition, Rio Grande asserted that the claims of most of the IRA depositors were barred by the three-month limitation period that applies to appeals of claim determinations by savings and loan liquidators. *See* Tex.Rev. Civ.Stat.Ann. art. 852a, § 8.09(f) (West Supp. 1993). In response, the state court certified the class of IRA depositors, designating the Lees as class representatives. *See* Tex. R.Civ.P. 42.

After a bench trial, the state court ruled that: (1) the IRAs were special deposits, entitled to priority over general deposits; (2) the IRA depositors were not entitled to interest on their claims after the date Rio Grande was placed in conservatorship; and (3) the federal suit tolled the three-month

limitations period. The court also awarded attorney's fees to the IRA depositors.

Rio Grande appealed to this Court, contending that the trial court erred first in declaring the IRAs to be special deposits, and second in determining that the federal suit tolled the three-month limitations period. *Gutierrez v. Lee*, 812 S.W.2d 388, 390 (Tex. App.—Austin 1991, writ denied). We reversed the trial court's decision, holding that the federal suit did not toll the three-month limitation period. *Id.* at 392. Because the trial court had made no findings as to whether the state court suit was timely for each of the class members under the terms of section 8.09(f), we remanded the cause. We did not address whether the IRA accounts were general or special accounts.

On remand, the district court conducted an evidentiary hearing and concluded that the only IRA depositors whose claims were *not* time-barred were those to whom Gutierrez had sent notices on or after October 4, 1988. The district court identified thirty-three such depositors in its findings of fact and conclusions of law, and in its final judgment. Furthermore, the district court reversed itself on the principal substantive question of the suit, holding that the IRA accounts were general deposits, with the same priority in the liquidation as other Rio Grande deposits.

In the instant appeal, the IRA depositors assail the district court's judgment, raising three points of error. In their first point of error, the IRA depositors argue that they are entitled to the full amounts of their IRA deposits because these funds were held in trust by Rio Grande. Appellants contend that as trust funds, their deposits were "special deposits" under Texas law. While a "general deposit" creates a debtor-creditor relationship between the financial institution and the depositor, no debtor-creditor relationship is created with a special deposit; instead, the bank holds a special account as a trustee or bailee. *Hudnall v. Tyler Bank & Trust Co.*, 458 S.W.2d 183, 186 (Tex.1970). While an agreement between the depositor and the bank is required to create a special deposit, appellants contend that the documents signed to create their IRA accounts

demonstrate that their IRA funds were meant to be special deposits.

Rio Grande responds that the IRA depositors are entitled to no greater priority for their deposits than the rest of Rio Grande's depositors. Rio Grande points to the fact that the IRA depositors received passbooks in the name of the IRA trust just like all other depositors, and likewise were paid interest for their deposits. Further, Rio Grande contends that the IRA disclosure statement explained that Rio Grande was to deposit IRA funds as directed by the IRA depositor. Therefore, Rio Grande argues that because the IRA depositors directed Rio Grande to deposit the IRA funds in interest-bearing accounts, there was no agreement that Rio Grande hold the IRA deposits as special deposits and return the funds intact. Rio Grande asserts that if the agreement had been to hold the funds in trust and return them intact, Rio Grande would not have paid interest on the accounts.

The IRA depositors also contend, in their second and third points of error, that the trial court erred in finding all but thirty-three of the IRA depositors' claims time-barred, and that the trial court erred in not awarding interest on the IRA deposits. Rio Grande responds by arguing that the trial court correctly held that the IRA depositors to whom claim notices had been mailed prior to October 4, 1988, were time-barred, and that the IRA depositors were not entitled to interest. Rio Grande also brings a cross-point contending that the trial court erred in not finding that IRA depositors to whom notice was mailed before November 21, 1988, were time-barred.

### DISCUSSION

■ In their first point of error, the IRA depositors contend that the trial court erred in holding that their IRA accounts were general rather than special accounts, and not entitled to priority over other depositors in the liquidation of Rio Grande's assets. We disagree.

■ The Texas Supreme Court reviewed in detail the difference between general and special deposits in *Hudnall v. Tyler Bank & Trust Co.*:

> When money or its equivalent is deposited in a bank without any special agreement, the law implies that it is to be mingled with the other funds of the bank, the relation of debtor and creditor is created between the bank and the depositor, and the deposit is general. In such a transaction the bank becomes the owner of the fund. When, on the other hand, money or its equivalent is so deposited with an accompanying agreement that the identical thing deposited shall be returned, or that the same shall be paid out for a specific purpose, the relation thus created is not that of debtor and creditor. Such a transaction is a special deposit, and the bank is liable only as bailee. In such a case the fund is a trust fund, the bank acquires no title thereto, and is a mere trustee for the safekeeping, return, or disbursement of the fund, according to the special contract by which the deposit is made.

*Hudnall*, 458 S.W.2d at 186 (quoting *McBride v. American Ry. & Lighting Co.*, 60 Tex.Civ.App. 226, 127 S.W. 229, 232–33 (Dallas 1910, no writ)).

An individual retirement account is "a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries" meeting certain requirements. 26 U.S.C.A. § 408 (West Supp. 1993).[1] IRAs permit individuals to set aside a limited amount of income per year that is tax deductible and only subject to income tax when withdrawn from the IRA. *Id.* The depositor who creates the IRA is both the settlor and the primary beneficiary of the trust, and the funds deposited constitute the corpus of the trust. IRAs are a unique type of trust in that the settlor/beneficiary has the sole authority to determine how the trust corpus is invested. The trustee bank acts only as custodian of the funds, and invests them as directed by the settlor/beneficiary.

1. Section 408 limits the amount of the annual contribution, the persons or organizations that may be trustees, permissible investments, the time when distributions may be made, and to whom distributions are made in case of the death of the primary beneficiary. 26 U.S.C.A. 408(a) (West Supp.1993).

Various types of investments may be made with the funds, such as stocks, bonds, mutual funds, and certificates of deposit or passbook savings accounts with banks and savings and loans. These investments are held in the name of the IRA account, not in the name of the depositor.

The IRA depositors contend that because their IRA accounts are trust accounts, they are therefore special deposits. The IRA depositors argue that as special deposits, their IRA funds were never commingled with Rio Grande's other assets, and therefore a debtor-creditor relationship never arose. Accordingly, the IRA depositors conclude they are entitled to the full amount of their IRA accounts, and should be given priority over the claims of other Rio Grande depositors in the liquidation.

The IRA depositors' argument is premised on a confusion between the IRA account, and the assets held *within* the IRA account. It is the IRA account that is held in trust, not the assets contained in the IRA account. The difference is readily apparent if the IRA account is thought of as a safe deposit box and the IRA account's assets as the contents of the safe deposit box. If a person leases a safe deposit box at a bank and places $1000 in cash in the safe deposit box, the bank has the responsibility to insure that the safe deposit box is secure in order to protect its contents. However, the person who rents the safe deposit box decides what to store in the safe deposit box, and cannot blame the bank if the *value* of the money or other item stored in the safe deposit box declines.

The relationship between the bank and the IRA account is similar to the bank's relationship with a safe deposit box. The financial institution administers the IRA accounts, keeping records of all deposits and withdrawals, but the IRA depositor—or more accurately the IRA *settlor*—determines what assets the IRA account contains, or under the

safe deposit box analogy, what is placed in the safe deposit box. Just as a bank is not responsible for the investment wisdom of storing cash in a safe deposit box, the financial institution administering the IRA account is not responsible if the IRA settlor's investment decision was unwise.

■ In the present case, some confusion arises because Rio Grande acted in a dual role as IRA custodian and investment institution for the IRA funds. As opposed to stocks, bonds, or mutual funds, the IRA depositors at Rio Grande were only given a choice between investing their IRA funds in Rio Grande certificates of deposit or Rio Grande passbook savings accounts. However, the fact that the certificates of deposit and passbook savings accounts were assets held by the IRA trusts did not alter the character of the investment, any more than stocks held in an IRA account differ from stocks held by an individual. If the issuing corporation were to go bankrupt, shareholders who held their stocks[2] in their IRA accounts would have no greater claim to corporate assets than would other shareholders. The legal presumption is that money deposited with a bank in an interest-bearing instrument is to be commingled with other funds at the bank, creating a debtor-creditor relationship between the bank and the depositor, in the absence of an agreement to the contrary. *Hudnall,* 458 S.W.2d at 186.

The IRA depositors, however, contend that language in the trust documents barred Rio Grande from commingling their IRA funds with funds from other Rio Grande deposits.[3] We view this language simply as prohibiting Rio Grande from commingling separate IRA *trusts.* Further, the IRA trust documents do not reflect an agreement not to commingle the *funds* of the IRA trusts. The disclosure statement, signed by all Rio Grande customers when the IRA account was opened, reads as follows:

**2.** More accurately, the IRA trustee would own a legal interest in the stocks, while the settlor/depositor would retain equitable ownership of the stocks.

**3.** The IRA depositors point to the following language under Article III of the "Individual Retirement Custodial Account" agreement: "No part

of the custodial funds may be invested in life insurance contracts, nor may the assets of the custodial account be commingled with other property except in a common trust fund or common investment fund (within the meaning of section 408(a)(5) of the Code)."

The funds in this trust will be invested in savings deposits chosen by you from among the classes of deposits offered for the investment of IRA funds. The trustee has discretion to determine what types of deposits will be included in such classes. However, if permitted by law and by the terms of the IRA trust agreement, the trustee may invest part or all of the funds in other investments as directed by you. You are solely responsible for directing investment of the funds accumulated in the IRA trust savings deposits or other authorized investments, and the trustee will carry out its responsibilities in this regard only in response to your specific instructions.

The disclosure statement indicates that Rio Grande did not accept the IRA funds "with an accompanying agreement that the identical thing deposited shall be returned." *Hudnall*, 458 S.W.2d at 186. The IRA depositors gave Rio Grande no such "specific instructions." On the contrary, the decision to invest the IRA funds in Rio Grande certificates of deposits or passbook savings accounts, which paid a high rate of interest—accompanied by greater risk—was entirely the decision of the IRA depositors. The IRA depositors are entitled to exactly what they placed in their "safe deposit boxes": their savings account passbooks and their certificates of deposit. It is unfortunate, but not the responsibility of the bank as custodian of the IRA, that the IRA depositors' investments declined in value.

The IRA depositors respond that these were not real "investments." They contend that they were not able to choose their investments because Rio Grande forced them to choose between only two options: Rio Grande certificates of deposits and Rio Grande passbook savings accounts. This argument, however, simply misconceives the point at which the IRA depositors made their investment decision. By choosing Rio Grande to be the custodian of their IRA accounts, the depositors chose to invest their IRA funds in Rio Grande Savings and Loan, rather than in some other permissible IRA investment.

The IRA depositors also cite several federal cases and cases from other states, contending that they stand for the proposition that IRA accounts are special deposits. None of the cases cited are on point. They stand for the proposition that a financial institution may not use IRA deposits to offset against the individual debts of an insolvent IRA depositor. Most of these cases are based on the fact that the financial institution is indebted to the IRA *trust* and not to the IRA depositor, and therefore, the financial institution is not permitted to use trust funds to pay the individual obligations of the IRA depositor. *See In re McDaniel*, 41 B.R. 132, 133 (Bankr.N.D.Tex.1984); *In re Todd*, 37 B.R. 836, 837–38 (Bankr.N.D.La.1984); *In re Dunn*, 5 B.R. 156, 158 (Bankr.N.D.Tex.1980). The other cases cited by the IRA depositors are also distinguishable as offset cases.[4]

Further, regulations promulgated by the Federal Deposit Insurance Corporation guide us in reaching the conclusion that IRA accounts should be treated as general deposits under Texas law. FDIC regulations provide that an IRA account is entitled to $100,000 of deposit account insurance beyond the insurance provided for the depositor's other accounts. 12 C.F.R. § 330.13 (1993). This regulation indicates that IRA funds are intended to be subject to the same risk of loss as other deposits. Accordingly, we conclude that IRA accounts are general deposits under Texas law and not entitled to priority over Rio Grande's other depositors. The IRA depositors' first point of error is overruled.

In their second point of error, the IRA depositors contend that the trial court erred in holding that some IRA customers' claims of priority were time-barred, and in their third point of error argue that they are entitled to interest on their claims. Because we have held that none of the IRA depositors are entitled to priority over other Rio Grande

---

4. *Masi v. Ford City Bank & Trust Co.*, 779 F.2d 397 (7th Cir.1985); *In re Mastroeni*, 57 B.R. 191 (Bankr.S.D.N.Y.1986); *First Interstate Bank v. Big Horn Federal Savings & Loan*, 770 P.2d 231 (Wy.1989); *First Nat'l Bank of Blue Island v. Estate of Philp*, 106 Ill.App.3d 360, 62 Ill.Dec. 433, 436 N.E.2d 15 (1982).

depositors, we need not address these points. We likewise need not address the cross-point raised by Rio Grande, contending that the trial court erred in not finding all of the IRA depositors' claims time-barred who received claim notices before November 21, 1988.

## CONCLUSION

Finding no error, the judgment of the trial court is affirmed.