Gerald D. COLVIN, Jr. and Amsouth
Bancorporation, Appellants,

v.

ALTA MESA RESOURCES,
INC., Appellee.

No. 01–94–00228–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 11, 1996.

Rehearing Overruled Feb. 29, 1996.

L. Glen Kratochvil, Houston, for Appellants.

Richard J. White, Houston, for Appellee.

Before OLIVER–PARROTT, C.J., and COHEN and ANDELL, JJ.

## OPINION

ANDELL, Justice.

This is an appeal from a summary judgment declaring ownership of disputed mineral interests in appellee, Alta Mesa Resources, Inc. (Alta Mesa). Appellants, Gerald D. Colvin, Jr. (Colvin) and Amsouth Bancorporation (Amsouth), also claimed ownership of the interests. In two points of error, Colvin and Amsouth assert Alta Mesa was neither a bona fide purchaser, nor an innocent purchaser for value of the disputed mineral interests.

The fundamental issue presented by this appeal is whether an owner of an individual retirement account (IRA) can assign the assets held by the IRA. We hold that he can and we affirm.

## I. FACTS AND PROCEDURAL POSTURE

BT Operating Co. (BT) filed an interpleader action seeking a determination of who the proper recipient of royalty payments on a mineral lease located in Nueces County, Texas was. Alta Mesa filed a motion for summary judgment contending the undisputed evidence showed it owned the mineral interest as a matter of law.

The summary judgment evidence showed the chain of title to the disputed mineral interest to be as follows:

Mobil
|
BT
|
Colvin (1%); Colvin–IRA/Amsouth (2%)
|
Spicer Oil
|
Alta Mesa

Before the assignments that gave rise to this dispute, the lease had been owned by Mobil Foundation, Inc. BT purchased Mobil's interest in the lease in 1989, and thereaf-

ter assigned portions of the interest to numerous assignees, including Colvin. Colvin, in his individual capacity, originally purchased a one-percent interest. He later purchased an additional two-percent interest in the same tract. Colvin stipulated that this separate two-percent interest was not owned by him personally, but by his individual retirement account: "Gerald D. Colvin—IRA." Amsouth was custodian of the IRA.

On July 5, 1991, Colvin assigned the subject interests to Spicer. The assignment agreement recited good and valuable consideration was received for the interests. The agreement was filed of record on August 27, 1991, in Nueces County. In pertinent part, the assignment agreement provided Colvin assigned "all of Assignor's right, title and interest, acquired by, through and under" all previous assignments. The lease assignment then referenced all previous assignments by title, date, and location in the Nueces County records. The assignment of the 2% interest to Colvin's IRA was specifically referenced in the document. Spicer then assigned this interest to Alta Mesa on July 30, 1991.

Although Alta Mesa claimed ownership of the entire three-percent interest held by Colvin, BT continued paying royalties to Colvin on the one-percent interest and to "Gerald D. Colvin–IRA" on the two-percent interest. When it received notice of Alta Mesa's claim to the mineral interest, BT continued paying royalties to Colvin's IRA and filed an interpleader seeking direction from the trial court as to who the proper recipient of the royalty payments was. Alta Mesa then filed a motion for summary judgment, claiming that as the bona fide purchaser of the entire three-percent mineral interest, it was entitled to all royalties generated from the mineral interest.

Alternatively, Alta Mesa also claimed to be an innocent purchaser for value of the three-percent mineral interest. The trial court granted Alta Mesa's motion, declaring Alta Mesa was the owner of the disputed two-percent mineral interest and the proper recipient of the royalties.[1] The trial court did

---

1. Colvin and Amsouth admitted at trial that "Alta      Mesa properly holds the one percent (1%) inter-

not state which of the two theories asserted by Alta Mesa provided the basis for the summary judgment.

## II.  STANDARD OF REVIEW

■■■ In a motion for summary judgment, the defendant has the burden of showing there are no genuine issues of material fact concerning one or more of the essential elements of the plaintiff's cause of action. *Goldberg v. United States Shoe Corp.*, 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied). Once the movant has established a right to summary judgment, the burden then shifts to the nonmovant to respond to the motion and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). Moreover, where the nonmovant does not expressly present issues precluding the movant's entitlement to the motion for summary judgment, the nonmovant is limited to arguing the legal sufficiency of the grounds presented by the movant on appeal. *McConnell v. Southside Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993); *Jones v. Legal Copy, Inc.*, 846 S.W.2d 922, 924 (Tex. App.—Houston [1st Dist.] 1993, no writ). When a trial court's order does not specify the grounds relied on for its ruling, the summary judgment will be affirmed if *any* of the theories advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989); *McCrea v. Cubilla Condominium Corp. N.V.*, 685 S.W.2d 755, 757 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

## III.  INDIVIDUAL RETIREMENT ACCOUNT

■■ The Internal Revenue Code defines the term "individual retirement account" as a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries. 26 U.S.C.A. § 408(a) (West Supp.1993). The IRA is a unique type of trust. The depositor who creates the IRA is the beneficiary of the trust, and the bank, as trustee, acts only as custodian of the

est of Gerald D. Colvin, Jr. which was owned individually." Ownership of this one percent

account. *In re Dunn*, 5 B.R. 156, 158 (Bankr.N.D.Tex.1980); *In re McDaniel*, 41 B.R. 132, 133 (Bankr.W.D.Tex.1984). The beneficiary possesses the sole authority to determine how the trust corpus may be invested, and may assign the account to a third person or may withdraw the money at any time, though there may be a penalty imposed for early withdrawal. *Lee v. Gutierrez*, 876 S.W.2d 382 (Tex.App.—Austin 1994, writ denied); *Dunn*, 5 B.R. at 158. Because a beneficiary has unlimited capacity to reach the funds, the IRA is nothing more than a savings account established to defer tax liability and to supplement the beneficiary's retirement income in the future. *In re Damast*, 136 B.R. 11, 18 (Bankr.D.N.H.1991).

■ Colvin contends an IRA is a trust and asserts he, as owner of only the beneficial title to the IRA, had no legal capacity to assign legal title to the two-percent interest held by the IRA. Further, both Colvin and Amsouth maintain an assignment of assets in the IRA could be accomplished only by the holder of legal title, which would be the trustee or the custodian bank, *i.e.,* Amsouth in this case. Colvin argues because the two-percent interest was owned by his IRA, the assignment he executed did not assign the two-percent interest to Spicer, and hence, Spicer could not have assigned it to Alta Mesa. Thus, he was only capable of transferring the one-percent interest he owned in his individual capacity to Spicer. Consequently, this one-percent interest was all Spicer had to assign to Alta Mesa.

One Texas case has addressed similar arguments of IRA depositors asserting IRAs are trusts. *Lee*, 876 S.W.2d at 386. In *Lee*, IRA depositors argued because their IRAs were trusts, they were also special accounts entitled to priority over general accounts in the liquidation of assets of a failed savings and loan association. *Id.* The trial court in *Lee* ruled IRAs were general accounts, and the depositors appealed. The appellate court affirmed, and addressed this argument as follows:

interest is not in dispute.

The IRA depositors' argument is premised on a *confusion between the IRA account, and the assets held within the IRA account.* The difference is readily apparent if the IRA account is thought of as a safe deposit box and the IRA account's assets as the contents of the safe deposit box. The person who rents the safe deposit box decides what to store in the safe deposit box ...

*Id.* (emphasis added).

In the instant case, the relationship between Amsouth and Colvin's IRA is identical to the relationship between the safe deposit box and its contents discussed above. Amsouth, as the financial institution, administers the IRA, keeping records and compiling reports of all deposits and withdrawals; but Colvin, as the IRA depositor, determines what assets the IRA will contain.

Therefore, we hold Colvin could freely assign the deposited assets without authorization from trustee bank.

## IV. BONA FIDE PURCHASER

■ In point of error one, Colvin contends Alta Mesa is not a bona fide purchaser because it had notice of a claim of adverse title. Colvin argues the lease signifying the two-percent interest was held in the name of "Gerald D. Colvin–IRA" put Alta Mesa on notice Colvin was merely the beneficial owner of an IRA without sufficient authority to alienate the corpus of the account.

Alta Mesa argues because the assets of an IRA are freely assignable by the owner of the account, Colvin's assignment to Spicer covered both the one-percent interest Colvin held in his own name, and the additional two-percent interest placed in the name of "Gerald D. Colvin–IRA." In 1991, Colvin executed an assignment to Spicer conveying "all of Assignor's right, title and interest" in the oil and gas lease. Spicer then assigned this interest to Alta Mesa. Hence, Alta Mesa contends it received the entire three-percent interest when Spicer executed an assignment of its interest to Alta Mesa.

■ A bona fide purchaser is one who makes a good faith purchase of real property for a valuable consideration without actual or constructive notice of an outstanding equity or an adverse interest or title. *Cooksey v. Sinder,* 682 S.W.2d 252, 253 (Tex.1984); *Strong v. Strong,* 128 Tex. 470, 98 S.W.2d 346, 347 (Tex.1936). Thus, the elements essential to a bona fide purchase are: payment of valuable consideration, absence of notice, and good faith. *Strong,* 98 S.W.2d at 347. Purchasers are also charged with notice of the terms of deeds which form an essential link in their chain of ownership. *Westland Oil Corp. v. Gulf Oil Corp.,* 637 S.W.2d 903, 908 (Tex.1982).

We have already concluded Amsouth has no inherent claim to IRA assets and Colvin was permitted to assign the interests at his discretion. Thus, the "IRA" designation would not put a subsequent good-faith purchaser on notice of a title defect. Therefore, Colvin's and Amsouth's argument that Alta Mesa had constructive notice of a defect in the chain of title cannot defeat Alta Mesa's status as a subsequent bona fide purchaser for value from Spicer. In view of Alta Mesa's lack of knowledge regarding any interest retained or claimed by Colvin, Alta Mesa is a good-faith purchaser for value of the mineral interests at issue.

We hold Alta Mesa was a bona fide purchaser of the disputed mineral rights, and is entitled to all royalty payments that accrue under its ownership. Accordingly, we overrule Colvin's first point of error. Our determination of appellant's first point renders moot the remaining point asserted by appellant. *See Carr,* 776 S.W.2d at 569.

We affirm the summary judgment rendered by the trial court.