Opinion issued May 19, 2011.


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00948-CV

———————————

WMC MorTgage Corporation, Appellant

V.

Abe Ham
Moss, Katherine MiKes, and JPMorgan Chase Bank, N.A., Appellees



 



 

On Appeal from the 189th District Court

Harris County, Texas



Trial Court Case No. 0921138

 



 

MEMORANDUM OPINION

          Appellant
WMC Mortgage Corporation brought this declaratory judgment action to adjudicate
the validity of a tax lien transfer and tax foreclosure sale of property on
which WMC held a preexisting lien. On cross-motions for summary judgment, the
trial court granted summary judgment in favor of appellees Katherine Mikes and
JPMorgan Chase Bank, N.A. on the basis of their affirmative defenses. The trial
court declared that Mikes is the owner of the property, JPMorgan has the first
lien against the property, and WMC has no legal interest in the property. By
agreement of the parties and order of the trial court, this interlocutory
appeal ensued. See Tex. Civ. Prac. & Rem. Code Ann. §
51.014(d) (West 2008). We conclude that the trial court properly granted
summary judgment on the basis of the bona fide purchaser and mortgagor defense
and affirm.

I.       Factual and procedural background

          After
graduating from college, Mikes decided to purchase her first home. Through a
licensed real estate agent, she found and purchased a condominium at Reata at
River Oaks for $154,900. To pay for the home, she obtained a mortgage from JPMorgan.
Approximately one year after Mikes purchased the property, WMC sued Mikes,
JPMorgan, and others, asserting that a previous tax foreclosure sale of the
property was invalid and that Mikes’s and JPMorgan’s interests in the property
were subject to WMC’s lien, which it had obtained from a pre-foreclosure owner
of the property, Matt Parker.  

          The
relevant ownership history of the property is as follows: When Parker purchased
the property, he executed a deed of trust granting Mortgage Electronic
Registration Systems, Inc. (“MERS”), acting as nominee for WMC, a lien on the
property. MERS assigned all rights in the deed of trust to WMC. Parker’s subsequent
failure to pay his maintenance fees to the condominium association resulted in
a lien against the property. The condominium association foreclosed on its lien,
selling the property to Texas Realty Holdings, LLC. In order to pay outstanding
taxes on the property, Texas Realty entered into a transaction authorized under
Chapter 32 of the Tax Code whereby Texas Realty nominated Dampkring, LLC to pay
the taxes on the property and, upon payment of the taxes by Dampkring, the tax
lien on the property was transferred from the taxing authorities to Dampkring.
When Texas Realty failed to repay Dampkring the amount paid in taxes, Dampkring
foreclosed on the tax lien, selling the property to Abe Moss. Mikes
subsequently bought the property from Moss. 

When Dampkring sold the property to
Moss, it sent notice of the foreclosure sale to WMC at “3100 Thorton Avenue,
Burbank, CA 91504.” This address is the address for WMC found in WMC’s deed of
trust from Parker, which states that notices to WMC must be given at that
address unless WMC designates another address. 
The notice provision in the deed of trust further provides that, for any
notice required by the deed and by applicable law, the notice requirement
imposed by applicable law is satisfied by notice in accordance with the deed of
trust. However, a different address for WMC is found in its assignment from
MERS, which was recorded after the deed of trust. The assignment does not
contain a notice provision and identifies the address for WMC therein only as
“assignee’s mailing address.” Both the deed of trust and the assignment were
recorded in Harris County public records. The certified mail delivery receipt
in the record shows the foreclosure notice was successfully delivered at the
Thornton Avenue address, and WMC does not expressly deny actual receipt of the notice
at that address.

WMC filed this suit seeking
judicial declarations that: (1) the transfer of the tax lien from Texas Realty
to Dampkring was invalid, (2) the subsequent sale to Moss was void, (3) Texas
Realty remains the record owner of the property, and (4) WMC’s deed of trust is
the first lien against the property. Mikes and JPMorgan filed motions for
summary judgment on WMC’s claims against them on four grounds: (1) they are
shielded by bona fide purchaser and mortgagor defenses, (2) WMC’s claims are
barred by the applicable statute of limitations, (3) WMC failed to deposit
funds into the registry of the trial court pursuant to Section 34.08(a) of the
Tax Code, a prerequisite for bringing its claims, and (4) WMC’s claims are
barred by waiver or estoppel. WMC filed a cross-motion for partial summary
judgment against Mikes and JPMorgan. The trial court granted Mikes and
JPMorgan’s motion for summary judgment and denied WMC’s cross-motion. 

 

II.      Standard
of review

We
review a trial court’s decision to grant summary judgment de novo. Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009); Valence Operating Co. v.
Dorsett, 164 S.W.3d 656,
661 (Tex. 2005). We review the summary judgment evidence in the light most
favorable to the party against whom the summary judgment was rendered,
crediting evidence favorable to that party if reasonable jurors could and
disregarding contrary evidence unless reasonable jurors could not. Fielding, 289 S.W.3d at 848; City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005). “Issues not expressly presented to the trial court
by written motion, answer or other response shall not be considered on appeal
as grounds for reversal.” Tex. R. Civ.
P. 166a(c).

Mikes and JPMorgan
sought traditional summary judgment on their affirmative defenses.  On a motion for traditional summary judgment, the movant
bears the burden of demonstrating that no genuine issue of material fact exists
and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); KPMG Peat Marwick v. Harrison
Cnty. Hous. Fin. Corp., 988
S.W.2d 746, 748 (Tex. 1999). A defendant may meet this burden by conclusively
establishing each element of an affirmative defense. Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997). Because the
trial court’s judgment does not identify the ground upon which it was granted, WMC
has the burden to negate each ground presented. State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 381 (Tex.
1993).

III.    Analysis

          Mikes and JPMorgan sought summary
judgment on the basis of a bona fide purchaser and mortgagor affirmative
defense. WMC contests Mikes and JPMorgan’s right to summary judgment on the bona
fide purchaser/mortgagor defense on two grounds: First, WMC contends that the
prior sale was void and therefore the bona fide purchaser defense does not
apply. Second, WMC contends that Mikes and JPMorgan do not qualify for the
defense because they had constructive notice of WMC’s claim on the property. We
conclude that the deficiencies asserted by WMC may render the foreclosure sale voidable
but do not render it void, such that the bona fide purchaser/mortgagor defense
is applicable. We also conclude that Mikes and JPMorgan did not have
constructive notice of WMC’s claim on the property. We therefore hold that the
trial court properly granted summary judgment on this ground and do not reach
alternative grounds upon which the trial court’s summary judgment may also rest.

          A.      Bona fide purchaser/mortgagor defense

A bona fide purchaser is one who acquires property in good
faith, for value and without notice of any prior third-party claim or interest.
Madison v. Gordon, 39 S.W.3d 604, 606
(Tex. 2001); Colvin v. Alta Mesa Res.,
Inc., 920 S.W.2d 688, 691 (Tex. App.—Houston [1st Dist.] 1996, writ
denied); see also Tex. Prop. Code Ann. § 13.001(a) (West
2003). A bona fide mortgagor is a lender who takes a lien in good faith, for
valuable consideration, and without actual or constructive notice of
outstanding claims. Hue Nguyen v. Chapa, 305 S.W.3d 316,
323 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Bona fide purchasers
and mortgagors are generally shielded from a third party’s prior claims against
the property. See Cnty. of Burleson v.
Gen. Elec. Capital Corp., 831 S.W.2d 54, 59 (Tex. App.—Houston [14th Dist.]
1992, writ denied) (holding lien holder’s rights were cut off when purchaser at
tax sale and his subsequent purchasers were bona fide purchasers); see also Slaughter v. Qualls, 139 Tex.
340, 345–46, 162 S.W.2d 671, 675–76 (1942) (holding that trustee’s foreclosure
sale of property to lender was void as between previous owner and
lender-purchaser who wrongfully caused sale of property when no default on loan
had occurred, but concluding lender’s subsequent good faith purchaser and lien
holder were nonetheless shielded against previous owner’s claims on property).

B.      Effect
of tax foreclosure sale

          WMC asserts that the tax foreclosure
sale to Moss was void on two grounds: First, WMC contends that the tax lien
transfer was not effective to transfer the lien to Dampkring and, therefore,
Dampkring lacked authority to foreclose. Second, WMC contends that certain
deficiencies in the foreclosure procedure and documentation rendered the sale
void. We determine that the tax lien transfer was valid and the tax foreclosure
sale may have been voidable but was not void.

1.       Validity
of tax lien transfer

          The process by which Dampkring obtained
the tax lien on the property is authorized by Section 32.06 of the Tax Code. See Tex.
Tax Code Ann. § 32.06; see also
Genesis Tax Loan Servs., Inc. v. Kothmann, No. 09–0828, 2011 WL 1820886, at
*1 (Tex. May 13, 2011) (“Section 32.06 of the Texas Tax Code provides that a
tax lien on real property, which takes priority over many other liens, may be
transferred, under specified conditions, to a person who pays the taxes with
the owner’s permission.”). The tax lien transfer occurred in August 2007 and is
governed by the statute as it existed prior to the 2007 amendments. See Act of May 25, 2007, 80th Leg.,
R.S., ch. 1329, §§ 1, 4, 5, 2007 Tex. Gen. Laws 4484–88 (current version at Tex. Tax Code Ann. § 32.06).[1]
Section 32.06 enables an owner of real property to authorize another party to
pay the taxes assessed against the property and contemplates that the tax lien
against the property will then be transferred to the party who pays the taxes. Id. § 1, sec. 32.06(a–1) &       (a–2), 2007 Tex. Gen. Laws at 4484. When
the transferee pays the taxes, the tax collector certifies that the taxes have
been paid by the transferee and that the tax lien has been transferred to the
transferee. Id. § 1, sec. 32.06(b), 2007
Tex. Gen. Laws at 4485. Under the statute as it existed at the time, the sworn
document authorizing payment of the taxes under Section 32.06(a–1) (herein, the
“sworn authorization”) and tax collector’s certified statement of payment and
transfer pursuant to Section 32.06(b) (herein, the “certified statement”) must
be recorded in the county where the property is located for the tax lien
transfer to be enforceable. Id. § 1,
sec. 32.06(d), 2007 Tex. Gen. Laws at 4485. A holder of a preexisting lien on
the property may have the transferred tax lien released by paying the amount
owed by the property owner to the transferee within six months after the date
on which the tax lien is recorded. Id. §
1, sec. 32.06(f), 2007 Tex. Gen. Laws at 4486. The transferee of the tax lien
may foreclose on the lien after one year, or less if permitted by the contract
between the owner and the transferee.  Id. § 1, sec. 32.06(i), 2007 Tex. Gen.
Laws at 4486. 

          WMC contends that the tax lien transfer
to Dampkring did not comply with Section 32.06(b) because:

the collector for the Taxing Units was required to certify “on the [S]worn [D]ocument that payment
of taxes, [etc.] has been made by [Dampkring] on behalf of [Texas Realty] and
that [its] tax lien is transferred to [Dampkring].  . . . In addition, the collector for the
Taxing Units was required to “attach to
the [S]worn [D]ocument [its] seal of office or sign [the Sworn Document]
before a Notary Public.”

 

(Bracketed
material and emphasis in original.) In support of this argument, WMC references
Texas Realty’s sworn authorization of Dampkring to pay the taxes on the property,
rather than the tax collector’s certified statement that the taxes were paid
and the tax lien was transferred. The tax collector’s certified statement in
the record contains the required statements regarding payment of taxes and the
transfer of the tax lien and is marked with the tax collector’s seal of office,
as required under Section 32.06(b). See Act
of May 25, 2007, 80th Leg., R.S., ch. 1329, § 1, sec. 32.06(b), 2007 Tex. Gen.
Laws at 4485; see also Kothmann, 2011
WL 1820886, at *2 (holding that tax collector’s sworn statement made before a
notary satisfied requirements of Section 32.06(b) when the tax collector had no
seal and therefore failed to attach his seal of office to the authorization).
Section 32.06(b), as it existed at the time, expressly permitted that “the sworn document, tax receipt and affidavit attesting to the
transfer of the tax lien may be combined into one document,” but it did not
require that they be combined into one document. See Act of May 25, 2007, 80th Leg., R.S.,
ch. 1329, § 1, sec. 32.06(b), 2007 Tex. Gen. Laws at 4485.

          WMC next argues that the tax lien
transfer was invalid because the sworn authorization and tax collector’s
certified statement were not recorded contemporaneously. It is undisputed that
both the sworn document and the tax collector’s certified statement were
recorded in the county where the property is located. We find no requirement in
Section 32.06 that these two documents must be recorded at the same time, so
long as they are both timely recorded in the proper county records. We conclude
that the tax lien transfer complied with the requirements of Section 32.06 and
was effective to transfer the lien.

2.       Validity of
foreclosure sale

 

WMC next argues that the tax foreclosure sale to Moss was
void on the basis of four purported deficiencies in the foreclosure sale and
documentation: (1) Texas Realty failed to obtain a court order for foreclosure under
Section 32.06(c), as amended in 2007; (2) the contract for foreclosure between
Texas Realty and Dampkring did not comply with the requirements of Section
32.065(b); (3) the sale was premature under Section 32.06(f);  and (4) WMC did not receive proper notice of
the foreclosure sale under Section 51.002 of the Property Code. We conclude
that a court order was not necessary, the sale was not premature, and the purported
deficiencies in the notice and contract for foreclosure could render the
foreclosure sale voidable but do not render it void.

a.       Nonapplicability of statute requiring court order

 

          A
transferee of a tax lien under Section 32.06 is authorized to foreclose the
lien either through a judicial sale or a non-judicial sale. See Act of May 25, 2007, 80th Leg., R.S., ch. 1329, § 1, sec.
32.06(c), 2007 Tex. Gen. Laws at 4485. Prior to the effective date of the 2007
revisions, a non-judicial foreclosure could be conducted under Section 51.002
of the Property Code and Section 32.065 of the Tax Code without a court order. Id. § 1, sec. 32.06(c)(2), 2007 Tex.
Gen. Laws at 4485.[2]
After the 2007 amendments became effective, a court order was necessary for any
foreclosure sale. Id.[3]
WMC argues that the amended statute governs the tax foreclosure sale, and
Dampkring was therefore required to obtain a court order prior to the
foreclosure. Mikes and JPMorgan argue that the pre-amendment statute governs,
and no court order was necessary. We conclude that the prior version of the
statute applies.

          The effective date of the amendments to
Sections 32.06 and 32.065 is September 1, 2007. Id. § 5, 2007 Tex. Gen. Laws at 4487. The
enacting language of the 2007 amendments provides that the amended versions of
the statutes apply to lien transfers and foreclosure sales that occur on or
after September 1, 2007, except that foreclosure sales that occur after
September 1, 2007 are governed by the previous statutes if they are pursuant to
(1) a lien transfer that occurred before September 1 and (2) a contract that
provides for specific foreclosure procedures under the law in effect at the
time the contract was executed. Id. §
4, 2007 Tex. Gen. Laws
at 4487. We conclude that the foreclosure sale here falls within that exception.

          It is
undisputed that the lien transfer from Texas Realty to Dampkring occurred
before September 1, 2007. The “Consent to Transfer of Tax Lien Pursuant to Texas Property Tax Code
Section 32.06 and Contract for Foreclosure of Tax Lien” between Dampkring and
Texas Realty specifically authorizes Dampkring to foreclose the transferred tax
lien “in the manner provided in Section 51.002 of the Texas Property Tax Code.”
Section 51.002 of the Property Code was in effect at the time of the contract
and lays out the specific procedures for sale thereunder. See Tex. Prop. Code. Ann.
§ 51.002 (West Supp. 2010). We conclude that the contract between Texas Realty
and Dampkring is “a contract that provided for specific foreclosure procedures
under the law in effect at the time the contract was executed.” Act of May 25, 2007, 80th Leg., R.S.,
ch. 1329, § 4(b), 2007 Tex. Gen. Laws 4484, 4487. The tax foreclosure sale is therefore
governed by Section 32.06 and 32.065 as they existed prior to the 2007
amendments, and Dampkring was not required to obtain a court order prior to the
foreclosure sale.




 

b.      Effect of the contract for foreclosure

 

WMC argues that Dampkring failed to
comply with Section 32.065(b)(3), (4), and (6), which governs the contract for
foreclosure between the property owner and the tax lien transferee under
Section 32.06. See Act of May 25, 2007, 80th Leg., R.S., ch. 1329, § 2, sec.
32.065(b), 2007 Tex. Gen. Laws at 4487 (current version at Tex. Tax Code Ann. § 32.065 (West Supp.
2010)). The subsections identified by WMC require that such a contract for
foreclosure contain provisions dictating: 

·       
recording of “the contract,” 

 

·       
recording of the sworn authorization and certified statement required by
Section 32.06, and 

 

·       
that the transferee serve a copy of the notice of sale on the mortgage
services and lien holders containing the following language:

 

PURSUANT TO TEXAS TAX CODE SECTION
32.06, THE FORECLOSURE SALE REFERRED TO IN THIS DOCUMENT IS A SUPERIOR TRANSFER
TAX LIEN SUBJECT TO RIGHT OF REDEMPTION UNDER CERTAIN CONDITIONS. THE
FORECLOSURE IS SCHEDULED TO OCCUR ON THE (DATE).

 

Id. § 2, sec.
32.065(b)(3), (4), (6),
2007 Tex. Gen. Laws at 4487. 

          The
record does not reflect a contract between Texas Realty and Dampkring
containing the terms specified in Section 32.065(b)(3), (4), and (6).[4] However, Dampkring did
record the property owner’s sworn authorization and the tax collector’s certified
statement in the county records, and it sent WMC a notice of foreclosure sale
containing the language prescribed by Section 32.065(b)(6). WMC asserts that
“the Dampkring Agreement was not actually recorded in accordance with Section
32.065(b)(3).” Assuming “the contract” referenced in Section 32.065(b)(3)
refers to the contract for foreclosure,[5] as WMC argues, Texas Realty
and Dampkring did record a contract for foreclosure, but it does not contain
all of the terms specified in Section 32.065(b). Although Section 32.065(b)(3)
requires that the contract be recorded and contain certain provisions, it does not
dictate that the foreclosure sale will be ineffective if the contract is
missing a required term. Id. § 2, sec.
32.065(b)(3), 2007 Tex. Gen. Laws
at 4487. By comparison, Section 32.06(d), as applicable at the time, does
expressly list the documents that must be recorded in order for the tax lien
transfer to be enforceable: “To be enforceable, a tax lien transferred as
provided in this section must be recorded with the sworn statement and
affidavit attesting to the transfer of the tax lien as described in Subsection
(b) in the deed records of each county in which the property encumbered by the
lien is located.” Id. § 1, 32.06(d), 2007 Tex. Gen. Laws at 4485. As
previously noted, these requirements were satisfied.

          By
its plain language, Section 32.065 governs the contract between the property
owner and the transferee of a tax lien, while Section 32.06 expressly dictates
the requirements for enforceability of a tax lien transfer. Id. §§ 1, 2, secs. 32.06(d), 32.065(b), 2007 Tex. Gen. Laws at 4485, 4487. We
conclude that when, as in this case, the actions required by Sections 32.06 and
32.065(b) have been performed and the only alleged defect is that the contract
between the parties does not contain provisions expressly requiring those
actions, the defect in the contract may render the foreclosure sale voidable
but does not, alone, render the foreclosure sale void. See Slaughter, 139 Tex. at 345–46, 162 S.W.2d at 674–75 (explaining
that sale is void if it is mere nullity, passing no title and conferring no
rights whatsoever, while sale is voidable if it passes title subject to right
of another party to have it set aside upon proof that sale was improperly
made); cf. Davis v. Howe, 213 S.W.
609, 610 (Tex. Comm’n App. 1919, judgm’t adopted) (holding tax foreclosure sale
that violated provision of statute prohibiting sheriff making sale from also
purchasing property was voidable rather than void); Johnston v. Bennett, 176 S.W.3d 41, 45 (Tex. App.—Houston [1st
Dist.] 2004, no pet.) (holding failure to comply with statutory Internal
Revenue Code provisions for tax foreclosure sale rendered sale voidable rather
than void). While WMC had the right to object to the tax foreclosure sale to
Moss on the basis of the identified deficiencies, Mikes and JPMorgan are
protected against those complaints if they qualify as bona fide purchasers in a
subsequent sale. See Lighthouse Church of
Cloverleaf v. Texas Bank, 889 S.W.2d 595, 601 (Tex. App.—Houston [14th
Dist.] 1994, writ denied) (“Such a deed may be voidable as between grantor and
grantee; it may nevertheless be effectual to convey title to an innocent
purchaser from the grantee.”) (citing Link
v. Page, 72 Tex. 592, 596, 10 S.W. 699, 701 (Tex. 1889); McCombs v. Abrams, 28 S.W.2d 584, 592
(Tex. Civ. App.—Galveston 1930), aff’d 48
S.W.2d 612 (Tex. Comm’n App. 1930)).

c.       Timing
of foreclosure sale

          Under
Section 32.06(f), prior to the 2007 amendments, the mortgage servicer of a
preexisting lien on the property encumbered by a transferred tax lien has six
months from the date the tax lien is recorded within which it may obtain a
release of the transferred tax lien by paying the transferee the amount owed. Act of May 25, 2007, 80th Leg., R.S.,
ch. 1329, § 1, sec. 32.06(f), 2007 Tex. Gen. Laws at 4486. WMC admits that this
provision does not expressly state that the transferred lien may not be
foreclosed within six months of the date of recording but contends that such a
time limit must be implied to give the provision its intended force. We
disagree.

Section 32.06 has a specific provision that governs when a
foreclosure may occur, stating that the foreclosure “may not be instituted
within one year from the date on which the lien is recorded . . . unless the
contract between the owner of the property and the transferee provides
otherwise.” Id. § 1, sec. 32.06(i), 2007
Tex. Gen. Laws at 4486.  The applicable
version of this provision further states that the transferee of the tax lien
“must notify the holders of all recorded liens on the property before
foreclosure in the same manner and within the same time frame as the transferee
must notify the owner of the property under Section 51.002, Property Code.”[6]
Id. Thus, Section 32.06, prior to the
2007 amendments, expressly authorized the property owner and transferee to
shorten the time during which foreclosure is precluded so long as the notice
provisions of Section 51.002 of the Property Code are satisfied. See id.[7]
The summary judgment evidence demonstrates that the foreclosure notices complied
with the notice period required under Section 51.002. 

d.      Effect of
allegedly inadequate notice to WMC

 

          The applicable version of Section
32.06 requires that Dampkring provide WMC with the same notice of the
foreclosure sale that the debtor is entitled to under Section 51.002 of the
Property Code. Act
of May 25, 2007, 80th Leg., R.S., ch. 1329, § 1, sec. 32.06(i), 2007 Tex. Gen.
Laws at 4486. Section 51.002(e) requires that notice under the statute be
served by certified mail, addressed to the debtor’s “last known address.”[8]
Tex. Prop. Code Ann. § 51.002(e).
The purpose of notice under Section 51.002 is to provide a minimum level of
protection to the debtor, and actual receipt of the notice is not
necessary.  See Onwuteaka v. Cohen, 846 S.W.2d 889, 892 (Tex.
App.—Houston [1st Dist.] 1995, writ denied); Houston Omni USA Co., Inc. v.
Southtrust Bank Corp., N.A., No. 01-07-00433-CV, 2009 WL 1161860 (Tex.
App.—Houston [1st Dist.] Apr. 30, 2009, no pet.) (mem. op.); see also WTFO, Inc. v. Braithwaite, 899
S.W.2d 709, 720 (Tex. App.—Dallas 1995, no writ); Hausmann v. Tex. Sav. & Loan Ass’n, 585 S.W.2d 796, 799 (Tex.
Civ. App.—El Paso 1979, writ ref’d n.r.e.).

WMC argues that the address to
which Dampkring sent notice of the foreclosure was not WMC’s “last known
address” and the foreclosure sale is therefore void. We do not decide whether
WMC’s “last known address” under the statute is the address provided in WMC’s
deed of trust—the address to which notice
was sent—or the address provided in
WMC’s assignment. Even assuming that Dampkring should have sent the foreclosure
notice to WMC’s other address, such a deficiency in the notice would render the
tax foreclosure sale voidable rather than void. 
See Elbar Invs., Inc. v. Wilkinson, No. 14–99–00297–CV, 2003 WL 22176624,
at *2–3 & n.1 (Tex. App.—Houston [14th Dist.] Sept. 23, 2003, pet. denied)
(mem. op.) (holding that junior lienholder lacked standing to challenge
foreclosure sale on basis of irregularities in notice because such deficiencies
rendered sale voidable rather than void); Fireman’s
Fund Ins. Co. of Texas v. Jackson Hill Marina, Inc., 704 S.W.2d 131, 135
(Tex. App.—Tyler 1986, writ ref’d n.r.e.) (holding that foreclosure sale of
building was rendered voidable rather than void by inadequate notice under
provisions of security agreement and applicable law); cf. Pyles v. Young, No. 06–07–00066–CV, 2007 WL 4462738, at *3–4
(Tex. App.—Texarkana Dec. 21, 2007, no pet.) (mem. op.) (holding that
allegations that foreclosure notices were sent to wrong address under Section
51.002 tended to show that foreclosure judgment was voidable, rather than void,
such that res judicata applied). As noted above, a sale that
is merely voidable is subject to the bona fide purchaser/mortgagor defense with
respect to subsequent buyers like Mikes and JPMorgan. See Lighthouse Church of Cloverleaf, 889 S.W.2d at 601 (citing Link, 72 Tex. at 596, 10 S.W. at 701; McCombs, 28 S.W.2d at 592).

C.      Constructive knowledge


 

WMC also asserts that Mikes and JPMorgan may not invoke the bona
fide purchaser/mortgagor defense because they had constructive notice of WMC’s
claim on the property. WMC contends that Mikes and JPMorgan had notice of its
claim on the property because its preexisting vendor’s lien and deed of trust
were properly recorded in the county records. The fault in WMC’s argument is
that there is nothing in the county records that would put Mikes and JPMorgan
on notice that those claims were not extinguished by the tax foreclosure sale. WMC’s
lien is subordinate to the tax lien, and proper foreclosure of a tax lien
extinguishes subordinate liens on the property. 
See Tex. Tax. Code Ann. § 32.05(b) (establishing superiority of
tax lien); Saturn Capital Corp. v. City
of Houston, 246 S.W.3d 242, 245 (Tex. App.—Houston [14th Dist.] 2007, pet.
denied) (holding that tax foreclosure sale extinguishes preexisting subordinate
liens on property); Nat’l Loan Invs., L.P. v. Spring Indep. Sch.
Dist., No. 01–94–00659–CV, 1995 WL 489441 (Tex. App.—Houston [1st
Dist.] Aug. 17, 1995, no writ) (not designated for publication) (noting that
foreclosure of tax liens extinguished mortgage lien on property); see also Conseco Fin. Serv. Corp. v. J &
J Mobile Homes, Inc., 120 S.W.3d 878, 881–82 (Tex. App.—Fort Worth 2003,
pet. denied) (holding that tax foreclosure sale extinguished junior lien on mobile
home); see also Kothmann, 2011 WL
1820886, at *2 (discussing the priority of tax liens). 

Dampkring recorded its deed of trust and the “Consent to
Transfer of Tax Lien Pursuant to Texas Property Tax Code Section 32.06 and
Contract for Foreclosure of Tax Lien”  in
June 2007; Mikes purchased the property from Moss in April 2008.  Prior to Mikes’s purchase, WMC had the
opportunity to raise its complaints regarding lack of notice and deficiencies
in the contract between Dampkring and Texas Realty and seek to have the tax
foreclosure sale declared void.  Because
WMC failed to do so and because the documents that must be recorded for an
enforceable tax lien transfer under Section 32.06—Dampkring’s deed of trust,
the sworn authorization for payment of taxes and the tax collector’s certified
statement—were in fact recorded and satisfied the statutory requirements, Mikes
and JPMorgan were not on notice that the tax foreclosure sale arguably failed
to extinguished WMC’s claims on the property. See Tex. Tax Code Ann.
§ 32.06(b), (d). We therefore conclude that the evidence put forth by Mikes and
JPMorgan demonstrating lack of notice of WMC’s claims against the property was
sufficient to satisfy their summary judgment burden. 

We overrule WMC’s first issue.  We do not reach WMC’s second issue—that the trial court should have granted its
cross-motion for partial summary judgment against Mikes and JPMorgan—because we have concluded that the trial court
properly granted summary judgment in favor of Mikes and JPMorgan.




 

Conclusion

We affirm the interlocutory order
of the trial court. 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Bland and Massengale.











[1]
          Section
1 of the Act shows the statute before and after the 2007 amendments. Section 4
of the Act provides that the amendments to Section 32.06 apply only to a tax
lien transfer occurring after the effective date of the Act. Section 5 of the Act
provides the effective date of the amendments as September 1, 2007.





[2]           Before
the 2007 amendments, foreclosure could be conducted “in the manner specified in Section
51.002, Property Code and Section 32.065 of this code, if the property owner
and the transferee enter into a contract that is secured by a lien on the
property.” See Act of May 25, 2007,
80th Leg., R.S., ch. 1329, § 1, sec. 32.06(c)(2), 2007 Tex. Gen. Laws 4485
(current version at Tex. Tax Code Ann. §
32.06(c)(2) (West Supp. 2010)).





[3]           Under
the statute as amended, foreclosure could be conducted “in the manner specified in Section
51.002, Property Code and Section 32.065, after the transferee or a successor
in interest obtains a court order for foreclosure under Rule 736, Texas Rules
of Civil Procedure, except as provided by Subsection (c-1) of this section,  if the property owner and the transferee enter
into a contract that is secured by a lien on the property.” Tex. Tax Code Ann. § 32.06(c)(2).





[4]           In
a footnote, WMC states its belief that the “contract” referenced in Section
32.065 is the “Dampkring Agreement,” by which WMC references the document titled
“Consent to Transfer of Tax Lien Pursuant to Texas Property Tax Code Section
32.06 and Contract for Foreclosure of Tax Lien.” In the text of its brief,
however, WMC looks to Dampkring’s deed of trust to support the proposition that
the contract for foreclosure does not contain the required terms. We do not
read the statute as requiring that the terms therein appear in a deed of trust
as opposed to another contract between the parties. 





[5]
          An argument could be made that
“the contract” referenced in Section 32.065(b)(3) refers to the contract giving
rise to the transferee’s priority lien—in
this case, the deed of trust, which was properly recorded—and the legislature has
now amended that section to refer expressly to the instrument of security. We
need not decide that issue here.





[6]
          Section
51.002 of the Property Code provides for a twenty-one day notice period. Tex. Prop. Code Ann. § 51.002 (West
Supp. 2010).





[7]
          Both of these provisions were
changed by the 2007 amendments. See Tex. Tax Code Ann. § 32.06(c-1).

 





[8]
          The Property Code defines the “debtor’s last
known address” as (1) for a debt secured by the debtor’s residence, the
debtor’s residence or (2) for a debt other than a debt secured by the debtor’s
residence, the “last known address as shown by the records of the mortgage
servicer of the security instrument” unless the debtor provided a written
change of address. Tex.
Prop. Code Ann. § 51.0001(2). This
definition is not readily applicable to a notice provided to a preexisting lien
holder under Section 32.06.