ACCEPTED
03-15-00039-CV
5381083
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/21/2015 2:14:02 PM
JEFFREY D. KYLE
CLERK

**Case No. 03-15-00039-CV**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/21/2015 2:14:02 PM
JEFFREY D. KYLE
Clerk

**IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AUSTIN, TEXAS**

**AVALON INVESTMENTS, LLC,**
**Appellant**

**V.**

**JEAN PENICK SPILLER,**
**Appellee**

**On Appeal from Cause No. 08-0128-A; in the 207th Judicial District Court of Hays County, Texas; Honorable R. Bruce Boyer, Judge Presiding**

**APPELLEE'S BRIEF**

Andrew Oliver
State Bar No. 24046556
Oliver Law Office
9951 Anderson Mill Road, Suite 201
Austin, Texas 78750
(512) 233-1103 Telephone
(512) 551-0330 Fax
aoliver@oliverlawoffice.com

ATTORNEY FOR APPELLEE,
JEAN PENICK SPILLER

# TABLE OF CONTENTS

INDEX OF AUTHORITIES…………………………………………………... iii

STATEMENT OF THE CASE…………………………………………... v

STATEMENT REGARDING ORAL ARGUMENT…………………………. vi

ISSUE PRESENTED………………………………………………… vii

STATEMENT OF FACTS…………………………………………….. 1

SUMMARY OF THE ARGUMENT……………………………………….. 3

ARGUMENT……………………………………………………... 5

I.      Applicable Standard of Appellate Review (De Novo)............................ 5

II.     Ms. Spiller Was A Bona Fide Purchaser For Value Without Notice as a Matter of Law......................................................................... 7

PRAYER………………………………………………………… 17

CERTIFICATE OF SERVICE……………………………………………… 19

CERTIFICATE OF COMPLIANCE………………………………………... 20

APPENDIX

A -    Collateral Transfer of Note (Security Agreement)

B -    Consent of Secured Party

C -    Release of Collateral Transfer of Note

D -    Substitute Trustee's Deed

# INDEX OF AUTHORITIES

CASES:

*Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.,*
348 S.W.3d 894, 900 (Tex. 2011)…………………………………………... 14

*Benser v. G.E. Capital Mortgage Servs., Inc.*, 1994 WL 156245, at 4
(Tex. App. – Dallas 1994, writ denied)(not designated for publication)……..... 13

*Bernal-Bell v. Saxon Mortg. Servs., Inc.*, 2010 WL 3250115
(Tex. App.-San Antonio, no pet) (not designated for publication)…………….. 13

*Chandler v. Guaranty Mortg. Co.,* 89 S.W.2d 250, 254
(Tex. Civ. App. – San Antonio 1935, no writ)…………………………………... 12-13

*Colvin v. Alta Mesa Resources, Inc.*, 920 S.W.2d 688
(Tex. App.- Houston[1st Dist.] 1996, writ denied)…………………………….. 7

*Cooksey v. Sinder,* 682 S.W.2d 252, 253 (Tex. 1984)…………………………. 7

*Esquivel v. Murray Guard, Inc.,* 992 S.W.2d 536, 543
(Tex. App.-Houston [14 Dist.] 1999, pet. denied)……………………………. 15

*Hartford Acc. & Indem. Co. v. Hewes*, 190 Miss. 225, 199 So. 93 (1940),
*judgm't mod.*, 199 So. 772 (1941)……………………………………………... 15

*Henke v. First Southern Properties, Inc.*, 586 S.W.2d 617
(Tex. Civ. App. – Waco 1979, writ ref'd n.r.e.)………………………………….. 16

*Hexter v. Pratt*, 10 S.W.2d 692 (Tex. Comm'n App. 1928)…………………….. 8

*In re T.A.*, 346 S.W.3d 676, 678 (Tex. App. – El Paso 2009, rev. denied)……. 14

*Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001)…………………………. 7

*MCI Telecommunications Corp. v. Tex. Utilities Elec. Co.*,
995 S.W.2d 647, 651-652 (Tex. 1999)………………………………………… 14

*Republic Nat. Bank of Dallas v. Nat'l Bankers Life Ins. Co.*,

427 S.W.2d 76, 81 (Tex. Civ. App. - Dallas 1968, writ ref'd n.r.e.)…………..… 15

*Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991)……… 6

*Slaughter v. Qualls*, 139 Tex. 340, 347,
162 S.W.2d 671, 675 (Tex. 1942)…....................................................... 4-5, 16-17

*South Tex. Water Auth. v. Lomas,* 223 S.W.3d 304, 306 (Tex. 2007)……… 14-15

*Tawes v. Barnes,* 340 S.W.3d 419, 425 (Tex. 2011)……………………….... 14

*University State Bank v. Gifford-Hill Concrete Corp.*, 431 S.W.2d 561, 571
(Tex. Civ. App.-Fort Worth 1968, writ ref'd n.r.e.)………………….……… 8

*Valence Operating Co. v. Dorsett*, 164 S.W.3d 656 (Tex. 2005)……………. 5-6

*Walters v. Pete*, 546 S.W.2d 871, 874 (Tex. Civ. App.-
Texarkana 1977, writ ref'd n.r.e)…………………………………………. 8

*Wilson v. Armstrong*, 236 S.W. 755, 760
(Tex. Civ. App.-Beaumont 1921, no writ)……………………………….. 13

*Wolfram v. Wolfram*, 165 S.W.3d 755, 758 fn. 4
(Tex. App.- San Antonio 2005, no pet.)……………………………….. 6

RULES:

TEX. R. CIV. P. 166a(c)…………………………………………………… 6

TEX. R. CIV. P. 329b(c)…………………………………………………… v

TEX. R. APP. P. 38.1…………………………………………………… 14

## STATEMENT OF THE CASE

On January 18, 2008, Appellant, Avalon Investments, LLC ("Avalon"), filed suit (Cause No. 08-0128) to set aside a January 1, 2008 foreclosure sale of a 30.458-acre tract of undeveloped land in Hays County, Texas [CR 4-35, 38]. After the foreclosure sale, but prior to the filing of suit by Avalon, Appellee, Jean Penick Spiller ("Ms. Spiller"), purchased an undivided one half (1/2) interest in the property from the foreclosure sale purchaser [CR 44]. Avalon subsequently joined Ms. Spiller as a defendant to the suit seeking to cancel her deed and requesting judgment for title and possession to the property [CR 4]. As an affirmative defense to Avalon's claim against her, Ms. Spiller alleged her status as a bona fide purchaser for value without notice [CR 36]. On July 31, 2013, Ms. Spiller filed a traditional motion for summary judgment on her affirmative defense of bona fide purchaser for value without notice [CR 38]. On August 13, 2014 the trial court granted Ms. Spiller's motion [CR 138-139]. On October 23, 2014 the trial court granted a motion to sever filed by Ms. Spiller and severed Avalon's claims against Ms. Spiller into this cause (Cause No. 08-0128-A) [CR 143-144]. On November 20, 2014, Avalon filed its motion for new trial [CR 145], which was overruled by operation of law. Rule 329b(c), TEX. R. CIV. P. [CR 2-3]. On January 20, 2015, Avalon timely filed its notice of appeal [CR 157].

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary.  The legal issues are straightforward. However, in the event the Court is of the opinion that oral argument would be beneficial and grants the request of Avalon for oral argument, then in such event Ms. Spiller respectfully requests she also be allowed to present oral argument to the Court.

# ISSUE PRESENTED

Did the trial court correctly grant summary judgment in favor of Ms. Spiller on her affirmative defense of bona fide purchaser for value without notice?

# STATEMENT OF FACTS

In November 2006 Avalon purchased a 30.458-acre tract of undeveloped land in Hays County, Texas from John Kimbro [CR 5]. As part of the purchase price Avalon executed a $360,000 promissory note payable to Kimbro. *Id*. The promissory note was secured by a Deed of Trust on the property. *Id*.

In December 2006 Kimbro executed a Collateral Transfer of Note (Security Agreement) to a third party lender JHX2, Ltd. [CR 98-107]. The Collateral Transfer of Note (Security Agreement) collaterally assigned Avalon's promissory note payable to Kimbro from Kimbro to JHX2, Ltd. as collateral to secure a loan from JHX2, Ltd. to Kimbro. *Id*. The Collateral Transfer of Note (Security Agreement) was filed for record in the Official Public Records of Hays County, Texas on December 27, 2006 [CR 107].

Avalon subsequently defaulted on its obligations under its promissory note to Kimbro [CR 110]. On December 3, 2007 the substitute trustee under the Deed of Trust executed by Avalon posted a notice of intent to foreclose by public sale, with the sale to be held on January 1, 2008 [CR 109-114]. On December 31, 2007, prior to the scheduled foreclosure sale, Kimbro's collateral transferee JHX2, Ltd. executed a written Consent of Secured Party [CR 119-124], ***expressly dated to be effective December 1, 2007***, which stated in pertinent part:

> Secured Party [JHX2, Ltd.] hereby consents to Debtor [Kimbro] accelerating the maturity of the Collateral [the Avalon promissory

1

note], including the posting of the Deed of Trust for foreclosure. The Secured Party [JHX2, Ltd.] further consents to Debtor [Kimbro] submitting a bid against the Collateral at the foreclosure sale. The Secured Party [JHX2, Ltd.] further ratifies any action previously taken by Debtor [Kimbro] in accelerating the maturity of the Collateral [the Avalon promissory note] and posting the Deed of Trust for foreclosure.

[CR 119].

At the same time, the collateral transferee JHX2, Ltd. also executed a written Release of Collateral Transfer of Note, *also expressly dated to be effective December 1, 2007*, by which JHX2, Ltd. transferred back to Kimbro the Avalon promissory note and all liens securing the Avalon promissory note [CR 126-131]. Both of these documents were filed for record in the Official Public Records of Hays County, Texas [CR 119-31].

On January 1, 2008, in accordance with the notice of foreclosure sale, the 30.458-acre tract was sold by substitute trustee's sale under the Deed of Trust executed by Avalon [CR 116-7]. Kimbro was the foreclosure sale purchaser. *Id.*

After purchasing the property at the foreclosure sale, Kimbro approached Ms. Spiller, who is an elderly widow, about buying an undivided one-half (1/2) interest in the property [CR 44]. Kimbro did not tell Ms. Spiller the circumstances of how he acquired the property or discuss any potential issues he might have with Avalon [CR 44]. At closing on January 9, 2008, Ms. Spiller paid Kimbro $400,000 cash for an undivided one half (1/2) interest in the property [CR 48].

On January 18, 2008, after Ms. Spiller had purchased her interest in the property, Avalon filed suit against Kimbro to set aside the foreclosure sale [CR 38]. Avalon did not join Ms. Spiller as a defendant in the suit until October 2010, almost two years after her purchase. Ms. Spiller's receipt of the citation and Avalon's amended pleading was her first knowledge of any claim by Avalon regarding the property [CR 44-45]. In the amended petition naming Ms. Spiller, Avalon alleged in pertinent part:

> [T]he Notice of Foreclosure sale posted on December 5 [sic], 2007 was defective in that the Defendant, John Kimbro did not own the Promissory Note which was secured by a Deed of Trust authorizing a foreclosure in an event of default. Defendant, John Kimbro did not possess the right nor authority to initiate the foreclosure on the Property.

[CR 6].

Based on this allegation, it was Avalon's contention that the January 1, 2008 foreclosure sale was void and should be set aside [CR 6-7]. Avalon also sought cancellation of Ms. Spiller's deed and judgment against her for title and possession to the property [CR 8].

## SUMMARY OF THE ARGUMENT

Ms. Spiller acquired her interest in the property on January 9, 2008 as a bona fide purchaser for value without notice of Avalon's then unfiled claim alleging that Kimbro was not the owner of the promissory note executed by Avalon and therefore without authority to initiate a foreclosure under the Deed of Trust

3

securing the promissory note. As established by the undisputed summary judgment evidence, Ms. Spiller had no actual notice of Avalon's claim of an alleged defect in the foreclosure procedure when she purchased her interest in the property [CR 44]. Similarly, the instruments in her chain of title to the property on the date of her purchase did not provide any constructive notice to Ms. Spiller of Avalon's then unfiled claim that Kimbro was not the owner of the promissory note and therefore unauthorized to foreclose on the property.

As a matter of law, and as shown further below, the recorded instruments in Ms. Spiller's chain of title do not provide any constructive notice of a potential claim by Avalon alleging that Kimbro was not the owner of the promissory note or otherwise unauthorized to foreclose. To the contrary, the recorded instruments facially confirm that Kimbro was the owner of the promissory note and was fully authorized to foreclose, and they certainly provide no constructive notice otherwise to a prospective purchaser of an interest in the property such as Ms. Spiller.

Furthermore, even if it were later to be determined in the remaining litigation between Avalon and Kimbro (Cause No. 08-0128) that the foreclosure was void on grounds of which Ms. Spiller did not have notice, resulting in a loss of Kimbro's interest in the property, Ms. Spiller is still protected with respect to her interest in the property as a bona fide purchaser for value without notice under the settled rule of *Slaughter v. Qualls*, 139 Tex. 340, 347, 162 S.W.2d 671, 675 (Tex.

4

1942). Under *Slaughter v. Qualls*, a subsequent bona fide purchaser for value without notice is protected even if a prior foreclosure in the chain of time is later determined to be void. This rule proceeds on the doctrine of estoppel: when the debtor by execution of the deed of trust cloaks the trustee under the deed of trust with authority to sell the property, the debtor is estopped to later challenge the title of a subsequent bona fide purchaser for value without notice who purchases from the party who bought at the foreclose sale or from another subsequent purchaser. While the immediate purchaser at the foreclose sale is generally at risk of unknown defects in the foreclosure process, a subsequent bona fide purchaser for value without notice is protected. This is a salutary rule, once land re-enters into the stream of commerce, because otherwise the certainty of land titles would be compromised by a potentially lurking defect in a past foreclosure in the chain of title when the defect is unknown to a later purchaser and not shown of record. If the rule were otherwise, it would pose an unacceptable risk to an innocent purchaser when there is a foreclosure in the chain of title, as is commonplace.

The trial court correctly granted summary judgment on Ms. Spiller's affirmative defense of bona fide purchaser for value without notice.

## ARGUMENT

### I.  Applicable Standard of Appellate Review (De Novo).

The standard of review for summary judgment is de novo. *Valence*

*Operating Co. v. Dorsett*, 164 S.W.3d 656 (Tex. 2005). However, the issues on appeal before this Court are limited to those that were expressly presented by Avalon before the trial court. TEX. R. CIV. P. 166a(c)("Issues not **_expressly_** presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.")(emphasis added); *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991); *Wolfram v. Wolfram*, 165 S.W.3d 755, 758 fn. 4 (Tex. App. - San Antonio 2005, no pet.) (". . . a summary judgment cannot be reversed on appeal on the basis of an issue that was not expressly and timely presented to the trial court by written response or other document.").

In the trial court Avalon raised only one issue in its response to Ms. Spiller's affirmative defense of bona fide purchaser for value without notice: Avalon's sole responsive issue was its erroneous contention that Ms. Spiller had constructive notice of Avalon's claim that Kimbro was not the owner of the promissory note and was thus unauthorized to foreclose [CR 75-76]. No other responsive issue was expressly raised in the trial court by Avalon with respect to any of the other elements of Ms. Spiller's affirmative defense of bona fide purchaser for value without notice [CR 68-78]. In this appeal Avalon has similarly limited its argument and briefing to the constructive notice issue [Appellant's Brief at 7-8]. As shown below, the trial court correctly granted summary judgment in favor of

Ms. Spiller and correctly held as a matter of law that she had no constructive notice of Avalon's claim regarding an alleged defect in the foreclosure.

## II. Ms. Spiller Was A Bona Fide Purchaser For Value Without Notice as a Matter of Law.

A bona fide purchaser is one who makes a good faith purchase of real property for a valuable consideration without actual or constructive notice of a claim. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001); *Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex. 1984); *Colvin v. Alta Mesa Resources, Inc.*, 920 S.W.2d 688 (Tex. App.- Houston [1st Dist.] 1996, writ denied). The undisputed summary judgment evidence presented by Ms. Spiller established her good faith purchase of an interest in the property by warranty deed for a cash purchase price of $400,000 without any actual notice of any claim by Avalon against the title [CR 44], and in the trial court Avalon presented no issues responsive to these elements of the bona fide purchaser defense [CR 68-78]. As already noted, in the trial court, as in this appeal, the sole issue raised by Avalon relates to its erroneous contention that Ms. Spiller had constructive notice of Avalon's claim of an alleged defect in the foreclosure procedure.

Turning to the issue of constructive notice, there is an initial important observation to be made about the recording system: a purchaser is not charged with constructive notice of every single recorded document in the clerk's office. If the rule were such, so that every document of record provided constructive notice,

7

the purpose of the recording system to provide a practical system for searching land titles would completely fail from impracticality. Purchasers are not charged with constructive notice of every document filed of record in the county clerk's office. Rather, a purchaser is only charged with constructive notice of those facts appearing in the specific chain of title through which the purchaser claims title that would place a reasonably prudent person on inquiry as to the rights of third parties in the property.

Second, and also of importance, whether or not the recorded instruments in a purchaser's chain of title provide constructive notice of a third party's claim with respect to the title to the property is a question of law for the court, and it is not a question of fact to be determined by the trier of fact. *Hexter v. Pratt*, 10 S.W.2d 692 (Tex. Comm'n App. 1928); *University State Bank v. Gifford-Hill Concrete Corp.*, 431 S.W.2d 561, 571 (Tex. Civ. App. - Fort Worth 1968, writ ref'd n.r.e.) ("[W]hereas actual notice is usually a question of fact for the jury, constructive notice is a legal presumption not to be controverted.").

Lastly, a party will only be charged with notice of what appears on the face of the documents. *Walters v. Pete*, 546 S.W.2d 871, 874 (Tex. Civ. App. - Texarkana 1977, writ ref'd n.r.e). Thus, the question here is whether the facial terms of the recorded documents in her specific chain of title put Ms. Spiller on notice of Avalon's claim of an alleged defect in the foreclosure (i.e., Avalon's

8

claim that Kimbro did not own the promissory note and thus did not have authority to foreclose). In its Appellant's Brief, Avalon identifies four documents in Ms. Spiller's chain of title that are alleged to give her constructive notice of Avalon's claim [Appellant's Brief at p. 11]:

1. Collateral Transfer of Note (Security Agreement) from Kimbro to JHX2, Ltd. [CR 16];

2. Consent of Secured Party executed by JHX2, Ltd. [CR 119];

3. Release of Collateral Transfer of Note executed by JHX2, Ltd. [CR 119]; and

4. Substitute Trustee's Deed [CR 34].

Contrary to Avalon's contention, these documents not only do not provide any such constructive notice, but instead confirm to a subsequent purchaser that Kimbro was empowered to initiate the foreclosure against the property under the Deed of Trust. Turning first to the Substitute Trustee's Deed, it is standard in form and expressly confirms the facts of default by Avalon in its obligations under the promissory note payable to Kimbro as well as the posting and filing of the notice of foreclosure sale and the particulars of the foreclosure sale conducted on January 1, 2008 [CR 35]. There is nothing disclosed by the Substitute Trustee's Deed that would excite in any respect the "suspicion" of any subsequent prospective purchaser of the property.

Avalon disingenuously asserts in its Appellant's Brief (p. 12) that the Collateral Transfer of Note (Security Agreement) should have raised "suspicions" about Kimbro's ownership of the promissory note. As an initial matter, this contention fails because even the most cursory reading of the Collateral Transfer of Note (Security Agreement) – to say nothing of the title of the document itself – reveals that it is a collateral transfer only, not a transfer of ownership of the promissory note, any more than a deed of trust is a transfer of ownership of land. Thus, among other things, in the Collateral Transfer of Note (Security Agreement):

- JHX2, Ltd. is identified as the "Secured Party" and not as "Owner" or some other similar term [CR 98];

- Kimbro is identified as ""Debtor" and not as "Seller" or some other similar term [CR 98];

- JHX2, Ltd. is granted a "Security Interest" and not "Ownership" or "Title" or some other similar term [CR 98]; [1]

- The promissory note transferred to JHX2, Ltd. is called the "Collateral" and not some other term indicating a different status [CR 98];

- In the event of default by Kimbro of his debt to JHX2.Ltd. provision is made

---

[1] If the Collateral Transfer of Note (Security Agreement) were in fact a transfer of "ownership" of the promissory note to JHX2, Ltd., which of course it is not, one would have great difficulty explaining the need for or even viable co-existence of a security interest in and ownership of the same property simultaneously by the same person; this further confirms the correct reading of the document as a security agreement, not a transfer of ownership.

10

for sale of the Avalon promissory note by public or private foreclosure sale in accordance with the Uniform Commercial Code, as would normally be the case with pledged property [CR 98]; and

- The transaction evidenced by the Collateral Transfer of Note (Security Agreement) is called in the instrument itself a "secured transaction" and not a "sale" or other similar term [CR 103].

The unquestionable character of the document as a security agreement, and not a conveyance, is further confirmed by this language in the document:

> This conveyance, however, is made in TRUST to secure the Indebtedness and should Debtor perform and comply with all of the covenants and agreements herein contained, and make prompt payment of all Indebtedness secured hereby as the same shall become due and payable, then this conveyance shall become null and void and of no further force and effect. . . .

[CR 102].

Thus, there is no reasonable reading of the Collateral Transfer of Note (Security Agreement) that would suggest to a subsequent purchaser that ownership of the promissory note passed from Kimbro to JHX2, Ltd.

Avalon's argument also completely ignores both (1) the Consent of Secured Party *dated to be effective December 1, 2007* [CR 119], which provides express consent for Kimbro to initiate and proceed with foreclosure and expressly ratifies all actions previously taken by Kimbro in the foreclosure [CR 119], and (2) the Release of Collateral Transfer of Note *also dated to be effective December 1, 2007*

11

[CR 126], which places all rights and liens with respect to the promissory note back into Kimbro *effective as of December 1, 2007* [CR 126]. Either one of these documents would be sufficient to resolve any "suspicions" that might arise in the mind of a subsequent purchaser of the property, even one who erroneously read the Collateral Transfer of Note (Security Agreement) to be something it was not. A correct consideration of the Collateral Transfer of Note (Security Agreement) as a security agreement, coupled with the cumulative effect of the Consent of Secured Party and the contemporaneous Release of Collateral Transfer of Note, as a matter of law does not give constructive notice of any lack of authority in Kimbro to proceed with foreclosure; to the contrary, these recorded instruments provide complete comfort to a prospective purchaser that Kimbro had whatever permission or consent as might be needed from JHX2, Ltd. to foreclose on the property. It is hard to imagine any further belts or suspenders that could be employed to confirm or ratify Kimbro's authority to foreclose. The recorded documents certainly would not give rise to any reasonable belief that JHX2, Ltd. was in any respect not in full agreement and concurrence with Kimbro's foreclosure of the property. Frankly, to contend that the documents should have given rise to "suspicions" is a specious argument. Texas courts have repeatedly used the doctrine of ratification to provide confirmation of authority of acts taken in the foreclosure process. *See, e.g., Chandler v. Guaranty Mortg. Co.,* 89 S.W.2d 250, 254 (Tex. Civ. App. – San

Antonio 1935, no writ); *Wilson v. Armstrong*, 236 S.W. 755, 760 (Tex. Civ. App.-Beaumont 1921, no writ); *Bernal-Bell v. Saxon Mortg. Servs., Inc.*, 2010 WL 3250115 (Tex. App.-San Antonio, no pet) (not designated for publication); *Benser v. G.E. Capital Mortgage Servs., Inc.*, No. 05-93-00995-CV, 1994 WL 156245, at *4 (Tex. App. – Dallas 1994, writ denied)(not designated for publication). In the present case all preparatory actions for the foreclosure sale were fully confirmed and ratified prior to the conduct of the sale on January 1, 2008, so that the substitute trustee was fully authorized on January 1, 2008 to conduct the foreclosure sale. This is not a case in which on a date after the foreclosure sale a post-sale ratification is retroactively attempted. While the doctrine of ratification as liberally applied in the Texas cases might well be extended to a case involving a post-sale ratification, it is not necessary for the Court in the present case to address such a circumstance. Here, as stated, all ratifying steps were completed prior to the conduct of the foreclosure sale on January 1, 2008.

The Collateral Transfer of Note (Security Agreement) admittedly does contain a contractual provision stating that Kimbro was required to obtain the "prior written consent" of JHX2, Ltd. as a prerequisite to posting the property for a foreclosure sale [CR 101]. Avalon has not specifically mentioned this contractual provision in the Collateral Transfer of Note (Security Agreement) in the argument in its Appellant's Brief, but Avalon did contend in the trial court that this

13

contractual provision was pertinent to its argument [CR 76].  While this trial court contention by Avalon should be considered as waived in this Court by reason of a failure to brief, *see*, *e.g., In re T.A.*, 346 S.W.3d 676, 678 (Tex. App. – El Paso 2009, rev. denied); TEX. R. APP. P. 38.1, in anticipation of possible attempted argument by Avalon in its reply brief, Ms. Spiller would point out the following: The Collateral Transfer of Note (Security Agreement) was a contract solely between Kimbro and JHX2, Ltd., and Avalon is in no respect a party to or beneficiary of this contract.  The contractual provision at issue patently was for the sole benefit of JHX2, Ltd. as the secured party under the Collateral Transfer of Note (Security Agreement).  A party who may be incidentally benefited by the performance of a contractual provision is not thereby a third-party beneficiary of the contract.  *MCI Telecommunications Corp. v. Tex. Utilities Elec. Co.*, 995 S.W.2d 647, 651-652 (Tex. 1999) ("A third party may recover on a contract made between other parties only if the parties intended to secure some benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit.").  A third party beneficiary contract may not be created by implication.  *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.,* 348 S.W.3d 894, 900 (Tex. 2011).  All doubts are resolved against creating third party beneficiary status.  *Tawes v. Barnes,* 340 S.W.3d 419, 425 (Tex. 2011).  Indeed, there is a presumption against third party beneficiary status.  *South Tex. Water*

14

*Auth. v. Lomas,* 223 S.W.3d 304, 306 (Tex. 2007); *Esquivel v. Murray Guard, Inc.,*

992 S.W.2d 536, 543 (Tex.App.-Houston [14 Dist.] 1999, pet. denied).

> [T]he controlling principle of law here involved is that one not a party
> to a contract can sue for a breach thereof only when the condition
> which is alleged to have been broken was placed in the contract for
> his direct benefit. A mere incidental beneficiary acquires by virtue of
> the contractual obligation no right against the promisor or the
> promisee.

*Republic Nat. Bank of Dallas v. Nat'l Bankers Life Ins. Co.*, 427 S.W.2d 76, 81

(Tex. Civ. App. - Dallas 1968, writ ref'd n.r.e.), quoting *Hartford Acc. & Indem.*

*Co. v. Hewes*, 190 Miss. 225, 199 So. 93, 199 So. 93 (1940), *judgm't mod.*, 199 So.

772 (1941).

When these applicable rules are applied in the present case, it is clear that

any benefit that might be derived by Avalon from the "prior written consent"

provision in the Collateral Transfer of Note (Security Agreement) is purely

incidental.  The absurd nature of any attempted claim by Avalon to third party

beneficiary status is shown most clearly by the following observation:  Avalon

would be claiming the benefit of a contractual provision which only comes into

play when Avalon has itself defaulted on the promissory note assigned as collateral

to JHX2, Ltd.; that is, Avalon is attempting to benefit when it has deprived Kimbro

and JHX2, Ltd. of the one benefit passing under the Collateral Transfer of Note

(Security Agreement)(i.e., the security of expected payment represented by the

assigned promissory note).  Thus, any benefit to Avalon in these circumstances

would be not only purely incidental, but wholly unwarranted, undeserved, and unexpected.

As a final point of argument, Ms. Spiller was not the immediate purchaser at the foreclosure sale, but a subsequent bona purchaser without notice. While the immediate purchaser at a foreclosure sale purchases at his or her risk with respect to defects in the foreclosure, *see, e.g.*, *Henke v. First Southern Properties, Inc.*, 586 S.W.2d 617 (Tex. Civ. App. – Waco 1979, writ ref'd n.r.e.), a subsequent bona fide purchase for value without notice is protected even if the underlying foreclosure sale were determined to be void. This rule was settled in the Texas Supreme Court case of *Slaughter v. Qualls*, 139 Tex. 340, 347, 162 S.W.2d 671, 675 (Tex. 1942), which is further dispositive of the issue presented on this appeal. While it is disputed that the issue alleged by Avalon with respect to the foreclosure in any respect renders the foreclosure void, even if it were later determined for some presently unfathomable reason in the remaining litigation between Avalon and Kimbro that the foreclosure sale were void, resulting in a loss of Kimbro's interest in the property, Ms. Spiller as a subsequent bona fide purchaser for value without notice is fully shielded against such a claim with respect to her interest in the property under the rule of *Slaughter v. Qualls*.

As previously observed in the Summary of Argument, the rule of *Slaughter v. Qualls* is based on estoppel. When a debtor executes a deed of trust, the debtor

16

cloaks the trustee under the deed of trust with authority to sell the property. The debtor is thereby estopped to later challenge the title of a subsequent bona fide purchaser for value without notice who purchases from the party who bought at the foreclose sale or from another subsequent purchaser. While the immediate purchaser at the foreclose sale may be generally at risk of unknown defects in the foreclosure process, a subsequent bona fide purchaser for value without notice, such as Ms. Spiller, is protected under the rule of *Slaughter v. Qualls*. If the rule were otherwise, the certainty of land titles would be undermined.

## PRAYER

Appellee, Jean Penick Spiller, respectfully requests that this Court affirm the Order Granting Defendant Jean Penick Spiller's Traditional Motion for Partial Summary Judgment signed by the trial court on August 13, 2014, deny all relief sought by Appellant, Avalon Investments, LLC, in this appeal, and grant such other and further relief to Appellee, Jean Penick Spiller, to which she may be justly entitled.

Respectfully submitted,

/s/ Andrew Oliver

_____

Andrew Oliver
State Bar No. 24046556
Oliver Law Office
9951 Anderson Mill Road, Suite 201
Austin, Texas 78750
(512) 233-1103 Telephone
(512) 551-0330 Fax
aoliver@oliverlawoffice.com

ATTORNEY FOR APPELLEE,
JEAN PENICK SPILLER

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 21, 2015, a true and correct copy of this Appellee's Brief was served by certified mail, return receipt requested, upon the following attorney of record for Appellants:

Arthur G. Vega
Law Offices of Arthur G. Vega
419 S. Main, Suite 301
San Antonio, Texas 78204
(210) 224-8888
(210) 225-7751 (Facsimile)
Attorney for Appellant

/s/ Andrew Oliver

_____

Andrew Oliver

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3), I certify the number of words in this Appellee's Brief (not including words contained in the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix) is 4,145 words based upon the Microsoft Word word-count function. This brief complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because this brief is printed using Times New Roman 14 point in text and Times New Roman 12 point font in footnotes produced by Word 2010 software.

/s/ Andrew Oliver

_____

Andrew Oliver



# COLLATERAL TRANSFER OF NOTE
## (Security Agreement)

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF HAYS | § | |

  John Kimbro, whose address is P.O. Box 1210, Kyle, Hays County, Texas, hereinafter called the "Debtor" (whether one or more), for a valuable and sufficient consideration paid, the receipt of which is hereby acknowledged, hereby TRANSFERS, ASSIGNS AND CONVEYS unto JHX2, Ltd., a Texas limited partnership, whose address is 2110A Boca Raton Drive, Suite 205, Austin, Travis County, Texas, hereinafter called the "Secured Party" (whether one or more), the promissory note (herein called the "Collateral" and in which the Debtor grants to the Secured Party a Security Interest), together with any and all renewals, extensions and rearrangements thereof, and all liens, rights, titles, equities and interests securing the same, described as follows, to-wit:

  That certain Promissory Note dated November 15, 2006 in the original principal amount of $360,000.00 executed by Avalon Investments, LLC, and payable to the order of John Kimbro, which note is secured by a Deed of Trust (the "Deed of Trust") of even date therewith to Sarah Scholwinski, Trustee, upon that certain parcel of land (the "Land") and being more fully described by metes and bounds on **Exhibit A** attached hereto and incorporated herein by reference, which Deed of Trust has been duly recorded under Document No. 06035560, in the Official Public Records of Hays County, Texas.

  This Collateral Transfer is made to secure the payment of that one certain promissory note in the original principal sum of TWO HUNDRED EIGHTY EIGHT THOUSAND AND NO/100 DOLLARS ($288,000.00), dated December 22, 2006, executed by Debtor and payable to the order of the Secured Party, together with any and all renewals, extensions and rearrangements thereof, and any and all other indebtedness now or hereafter to become owing by Debtor (or either of them, if more than one) to Secured Party (collectively, the "Indebtedness") and upon full payment of which Indebtedness this Collateral Transfer shall be null and void and the Collateral, together with the liens securing the same, shall, at the expense of the Debtor, be re-transferred, without warranty or recourse, to the Debtor by the Secured Party.

  Debtor represents and warrants to Secured Party that Debtor is the owner and holder of the Collateral, subject to no claims of third parties, and that the Collateral is in full force and effect, is not in default, that no claims or defenses exist in favor of the payor thereof and that there is presently due and owing thereon the principal sum of $360,000.00.

  In the event of default in the payment of any installment, principal or interest, of any part of the Indebtedness hereby secured, in accordance with the terms of any thereof, the Secured

Austin Data Inc. HC ADI10342 HY 2006038854.001

Party may elect, the Debtor hereby expressly waiving notice, demand and presentment, to declare the entire Indebtedness immediately due and payable.

In the event of default in the payment of the Indebtedness when due or declared due, the Secured Party shall have the right to sell the Collateral at Public Sale to the highest bidder for cash at the courthouse door of the county of the Secured Party's address hereinabove stated, after having given notice of the time, place and terms of such Public Sale by posting a written or printed notice of said sale at the courthouse door of said county at least ten (10) days before the day of sale and after sending reasonable notice to the Debtor and to such other person or persons legally entitled thereto under the Uniform Commercial Code of Texas, of the time and place of the public sale, and the Secured Party shall transfer to the purchaser at such sale the Collateral, together with all liens, rights, titles, equities and interests in and to the above described property securing the payment thereof, and the recitals in such transfer shall be prima facie evidence of the truth of the matters therein stated and all prerequisites to such sale required hereunder and under the laws of this State shall be presumed to have been performed. The proceeds of the sale shall be applied, first to the reasonable expenses of the sale and then toward the payment of the principal, interest and attorney's fees due and unpaid upon the Indebtedness hereby secured, rendering the balance, if any, and surplus, if any, to the person or persons legally entitled thereto under the Uniform Commercial Code of Texas, but if there be any deficiency, the Debtor shall remain liable therefor. The Secured Party shall have the right to purchase at such public sale, being the highest bidder therefor.

The Secured Party, in addition to the rights and remedies provided for in the preceding paragraph, shall have all the rights and remedies of a Secured Party under the Uniform Commercial Code of Texas and the Secured Party shall be entitled to avail itself of all such other rights and remedies as may now or hereafter exist at law or in equity for the collection of said Indebtedness and the foreclosure of the Security Interest created hereby and the resort to any remedy provided hereunder or provided by the Uniform Commercial Code of Texas, or by any other law of Texas, shall not prevent the concurrent employment of any other appropriate remedy or remedies.

The requirement of reasonable notice to the Debtor of the time and place of any public sale of the Collateral, or of the time after which any private sale or any other intended disposition thereof is to be made, shall be met if such notice is mailed, postage prepaid, to the Debtor at the address of the Debtor designated at the beginning of this instrument, at least five (5) days before the date of any public sale or at least five (5) days before the time after which any private sale or other disposition is to be made.

The Secured Party may remedy any default, without waiving same, or may waive any default without waiving any prior or subsequent default.

The Security Interest herein created shall not be affected by or affect any other security taken for the Indebtedness hereby secured, or any thereof, and any extensions may be made of the Indebtedness without affecting the priority of this Security Interest or the validity thereof

2

with reference to any third party, and the holder of said Indebtedness shall not be limited by any election of remedies if it chooses to foreclose this Security Interest by suit. The right to sell under the terms hereof shall also exist cumulative with said suit and one method shall not bar the other, but both may be exercised at the same or different times, nor shall one be a defense to the other.

The Debtor authorizes the Secured Party, at Secured Party's option, to collect and receipt for any and all sums becoming due upon the Collateral, such sums to be held by the Secured Party without liability for interest thereon and applied toward the payment of the Indebtedness as and when the same becomes payable, and the Secured Party shall have the full control of the Collateral and the liens securing the same until the Indebtedness hereby secured is fully paid and shall have the further right to release the lien or liens securing the Collateral upon the full and final payment thereof to the Secured Party, but the Secured Party is under no obligation to make or enforce the collection of the Collateral and the failure of the Secured Party from any cause to make or enforce the collection thereof shall not in any way prejudice the right of the Secured Party to thereafter make or enforce collection thereof or in any way affect the Indebtedness to the Secured Party hereby secured.

At the request of the Secured Party, the Debtor will maintain a special bank account with such financial institution as the Secured Party may designate, over which the Secured Party shall have the sole power of withdrawal. In such event, the Debtor will deposit upon receipt all proceeds of the Collateral and the Secured Party may apply the whole or part of the funds on deposit in the special account against the Indebtedness. Any portion of funds on deposit in the special account which the Secured Party elects not to so apply may be paid over by the Secured Party to the Debtor. The Debtor hereby pledges such special account to the Secured Party as security for the payment of the Indebtedness. The Debtor agrees to execute such other documents, specific pledges, and to take such other actions as the Secured Party may require for the purpose of giving full effect to the pledge of such special account, and the perfection and enforcement thereof. Nevertheless, such pledge is intended to take effect immediately upon the execution of this Collateral Transfer, without the necessity of executing any further documents and taking any other actions, and the same shall be fully effective to the full extent allowed by applicable law immediately upon the execution of this Collateral Transfer.

The Debtor hereby irrevocably constitutes and appoints the Secured Party and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of the Debtor and in the name of the Debtor or in its own name, from time to time in the Secured Party's discretion, for the purpose of carrying out the terms of this Collateral Transfer, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Collateral Transfer, and, without limiting the generality of the foregoing, the Debtor hereby gives the Secured Party the power and right, on behalf of the Debtor, without notice to or assent by the Debtor, to do the following:

3

(a)    at any time, in the name of the Debtor or its own name, or otherwise, to take possession of and indorse and collect any checks, drafts, notes, acceptances or other instruments for the payment of moneys due under, or with respect to, any Collateral and to file any claim or to take .any other action or proceeding in any court of law or equity or otherwise deemed appropriate by Secured Party for the purpose of collecting any and all such moneys due or with respect to such Collateral whenever payable;

(b)    (i) to direct any party liable for any payment under any of the Collateral to make payment of any and all moneys due or to become due thereunder directly to Secured Party or as Secured Party shall direct; (ii) to ask or demand for, collect, receive payment of and receipt for, any and all moneys, claims and other amounts due or to become due at any time in respect of or arising out of any Collateral; (iii) to commence and prosecute any suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect the Collateral or any thereof and to enforce any other right in respect of any Collateral; (iv) to defend any suit, action or proceeding brought against the Debtor with respect to any Collateral; (v) to settle, compromise or adjust any suit, action or proceeding described in the preceding clause and, in connection therewith, to give such discharges or releases as Secured Party may deem appropriate; (vi) generally, to do, at the Secured Party's option and the Debtor's expense, at any time, or from time to time, all acts and things which Secured Party deems necessary to protect, preserve or realize upon the Collateral and the liens of the Secured Party thereon and to effect the intent of this Collateral Transfer, all as fully and effectively as the Debtor might do.

The Debtor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof. This power of attorney is a power coupled with an interest and shall be irrevocable.

The Debtor shall not accelerate the maturity of the Collateral or take any affirmative collection actions, including without limitation causing the Trustee under the Deed of Trust to post same for foreclosure, without the prior written consent of the Secured Party, which consent may be withheld in the Secured Party's sole discretion. In the event the Secured Party consents to the posting of the Deed of Trust for foreclosure such sale shall be for cash, and the Debtor may not bid a credit against the Collateral without the prior or contemporaneous written consent of the Secured Party, which consent may, but need not, set a maximum amount which may be so credited.

The Debtor shall on or before April 15th of each year (and at such other times as the Secured Party may request) deliver or cause to be delivered to the Secured Party then current financial statements of the Debtor and any other party liable on all or any portion of the indebtedness which is secured hereby. Such financial statements shall include a balance sheet and cash flow statement and income tax returns for the preceding calendar year and pro forma financial statements for the current calendar year. All financial statements submitted pursuant to this provision shall be in form and detail satisfactory to the Secured Party. All financial statements shall be certified as true and correct by the party submitting such statement.

4

Austin Data Inc.   HC  ADI10342   HY  2006038854.004

The Debtor has GRANTED, SOLD and CONVEYED and by these presents does GRANT, SELL and CONVEY all of Debtor's present and hereafter acquired right, title and interest, in and to the Land, unto John C. Hambrick, Trustee for the benefit of the Secured Party, TO HAVE AND TO HOLD the said Land together with any and all improvements now or hereafter located thereon, all equipment and appliances now or hereafter attached thereto or used in connection therewith, all heating, plumbing, refrigeration, lighting fixtures, and articles of personal property now or hereafter attached to or used in and about the improvements, and the rights, privileges and appurtenances thereto belonging unto the said Trustee, and to his or her substitutes or successors forever (said Land, improvements, privileges, appurtenances and other property described herein being hereinafter collectively referred to as the "Mortgaged Property"). Debtor hereby binds itself, its heirs, personal representatives, successors and assigns to WARRANT and FOREVER DEFEND the said Mortgaged Property unto the Trustee, his successors, substitutes and assigns forever, against the claim or claims of all persons claiming or to claim the same or any part thereof. This conveyance, however, is made in TRUST to secure the Indebtedness and should Debtor perform and comply with all of the covenants and agreements herein contained, and make prompt payment of all Indebtedness secured hereby as the same shall become due and payable, then this conveyance shall become null and void and of no further force and effect, and shall be released upon the written request and at the expense of Debtor, by the Secured Party. This conveyance shall include, and the liens, security interests, and assignments created hereby shall encumber and extend to, other, further and additional estates, interests and rights (collectively, "Further Interests") which may now or at any time be acquired by Debtor in or to the Mortgaged Property, and if fee simple title to any of the Further Interests shall ever become vested in Debtor, such fee simple interest shall be encumbered hereby in the same manner as if Debtor had fee simple title to the Further Interests as of the date of execution hereof. Upon acquisition of all or any portion of the Mortgaged Property by the Debtor, whether by way of foreclosure, acceptance of a deed in lieu of foreclosure or in any other manner whatsoever, prior to payment in full of the Indebtedness, the Debtor covenants and agrees to execute such deeds of trust and other further assurances as the Secured Party may reasonably request in order to more fully implement the provisions of this transfer. Nevertheless, this conveyance is intended to be a present conveyance, and shall not be conditioned upon Debtor executing such documents or taking such actions, and is in addition to the security interests and collateral assignment hereunder and not in lieu thereof.

The pronouns used in this Collateral Transfer are in the masculine and neuter gender but shall be construed as masculine, feminine or neuter as occasion may require. "Secured Party" and "Debtor" as used in this agreement include, shall bind and shall inure to the benefit of the respective heirs, executors or administrators, successors, representatives, receivers, trustee and assigns of such parties. If there be more than one Debtor, their obligations shall be joint and several.

Any default in the payment of any indebtedness of Debtor to Secured Party or under any of the instruments securing such indebtedness, at the option of the Secured Party shall constitute a default under this Collateral Transfer; and any default in the payment of the indebtedness hereby secured or under this Collateral Transfer, at the option of the Secured Party, shall mature

5

Austin Data Inc.   HC  ADI10342  HY  2006038854.005

all indebtedness of the Debtor to the Secured Party. The undersigned further agrees that in the event of default in the payment of the Collateral Note or of any installment thereof, or of a breach of any covenant of any lien instrument securing the Collateral Note, then at the option of the Secured Party, the Indebtedness hereby secured may (without notice, presentment or demand), be declared immediately due and payable in its entirety.

The law governing this secured transaction shall be the Uniform Commercial Code as adopted in Texas and other applicable laws of the State of Texas. All terms used herein which are defined in the Uniform Commercial Code of Texas shall have the same meaning herein as in said Code.

EXECUTED this 22nd day of December, 2006.

John Kimbro

THE STATE OF TEXAS §
§
COUNTY OF TRAVIS §

This instrument was acknowledged before me on the 22nd day of December, 2006, by John Kimbro.



Barbara J. Carstens
Notary Public
State of Texas
My Comm. Exp. 08-14-2010

Notary Public in and for the State of Texas

After Recording Return to:

JHX2, Ltd.
2110A Boca Raton Dr.
Suite 205
Austin, TX 78747

6

# EXHIBIT "A"

## METES AND BOUNDS DESCRIPTION

### 30.458 ACRES OUT OF THE
### ELISHA PRUETT SURVEY No. 23, ABS. 376
### AND THE
### JESSE B. EAVES SURVEY No. 5, ABS. 166
### AND 0.06 ACRE OUT OF THE
### ELISHA PRUETT SURVEY No. 23, ABS. 376
### HAYS COUNTY, TEXAS

**Tract 1**
ALL THAT CERTAIN PARCEL OR TRACT OF LAND BEING 30.458 ACRES, MORE OR LESS, OUT OF THE ELISHA PRUETT SURVEY No. 23, ABSTRACT No. 376 AND THE JESSE B. EAVES SURVEY No. 5, ABSTRACT No. 166, ALL IN HAYS COUNTY, TEXAS, SAID 30.458 ACRES BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING at a ½" iron rod found in the east line of County Road 205, also known as Dacy Lane, in the west line of that tract called 27.525 acres in a deed to Mary A. C. Kelly-Dillon et vir David M. Dillon, of record in Volume 394, Page 770 of the Hays County Deed Records, at the southwest corner of a tract called 5.00 acres out of said Dillon 27.525 acre tract described in a deed to the Texas Veterans Land Board, of record in Volume 1389, Page 154 of the Hays County Deed Records, for the westerly northwest corner and POINT OF BEGINNING hereof

THENCE through the interior of said 27.525 acre tract and with the south line of said 5.00 acre tract, N89°42'E for a distance of 951.93 feet to a ½" iron rod found, taken to mark the southeast corner of said 5.00 acre tract, for an interior corner hereof

THENCE continuing through the interior of said 27.525 acre tract and with the east line of said 5.00 acre tract N00°06'W for a distance of 202.67 feet to a galvanized bolt found in the north line of said 27.525 acre tract at the

1

Austin Data Inc.   HC  ADI10342   HY   2006038854.007

southwest corner of a tract called 6.809 acres in a deed to Angel Rodriguez, of record in Volume 2109, Page 798 of the Hays County Deed Records, at the northeast corner of said 5.00 acre tract for the northerly northwest corner hereof

THENCE with the north line of said 27.525 acre tract and south line of said Rodriguez tract, the following 3 calls:

1.) S86°46'E, at a distance of approximately 95 feet passing the east line of the Elisha Pruett Survey and west line of the Jesse B. Eaves survey, and continuing on for a total distance of 120.22 feet to a ½" iron pipe found at an angle point

2.) N79°13'E for a distance of 199.90 feet to a ½" iron pipe found at an angle point

3.) N21°35'E for a distance of 283.95 feet to a 5/8" iron pipe found at the southeast corner of said Rodriguez tract, in the south line of a tract called 10.44 acres in a deed to Charles J. Holley, of record in Volume 691, Page 724 of the Hays County Deed Records, for an angle point hereof

THENCE continuing with the north line of said 27.525 acre tract and the south line of said Holley tract, the following 2 calls:

1.) S66°52'E for a distance of 236.51 feet to a 5/8" iron pipe found at an angle point

2.) N66°03'E for a distance of 328.26 feet to a ½" iron pipe found at the northerly northwest corner of a tract called 12.977 acres in a deed to Michael R. McKenna, of record in Volume 1320, Page 75 of the Hays County Deed Records, at the northeast corner of said 27.525 acre tract for the northeast corner hereof

THENCE with the east line of said 27.525 acre tract and a west line of said McKenna tract, S20°50'E, at a distance of 163 feet pass the apparent center of a natural gas pipeline, and continuing on for a total distance of 348.02 feet to a ½" iron pipe found at an interior corner of said McKenna tract, for the easterly southeast corner of said 27.525 acre tract and easterly southeast corner hereof

THENCE with a northwest line of said McKenna tract and southeast line of said 27.525 acre tract, the following 3 calls:

2

Austin Data Inc.   HC   ADI10342   HY   2006038854.008

1.)   S62°30'W, at a distance of approximately 231 feet passing the apparent center of a natural gas pipeline, and continuing on for a total distance of 459.35 feet to a ½" iron pipe found at an angle point

2.)   S37°07'W for a distance of 192.95 feet to a ¾" iron pipe found at an angle point

3.)   S36°26'W, at a distance of 271.78 feet passing the westerly northwest corner of said McKenna tract and the northeast corner of a tract called 7.44 acres in a deed to Leo Sanchez et ux, of record in Volume 732, Page 163 of the Hays County Deed Record, and continuing on said course, now with the north line of said Sanchez tract for an additional 150.64 feet for a total distance of 422.42 feet to a capped iron rod set, stamped RPLS 3693, for an angle point

THENCE continuing with the south line of said 27.525acre tract and with the north line of said Sanchez tract and then the north line of a tract called 5.494 acres in a deed to Mariano Mendoza, of record in Volume 1932, Page 795 of the Hays County Deed Records, S72°53'W, at a distance of approximately 179.2 feet passing the west line of the Eaves Survey and east line of the Pruett Survey, at a distance of 398.16 feet passing a ½" iron rod found at the northwest corner of said Sanchez tract and northeast corner of said Mendoza tract, and continuing on for a total distance of 548.00 feet to a ½" iron pipe found at an angle point

THENCE with an east line of said 27.525 acre tract and a west line of said Mendoza tract, S07°42'E for a distance of 132.90 feet to a ½" iron pipe found in said Mendoza line at a southeast corner of said 27.525 acre tract, at the northeast corner of an unidentified tract (deed reference and name unavailable), for a southeast corner hereof

THENCE with the south line of said 27.525 acre tract and north line of said unidentified tract, the following 2 calls:

1.)   S67°25'W for a distance of 108.31 feet to a ½" iron pipe found at an angle point
2.)   S89°02'W for a distance of 101.73 feet to a ½" iron pipe found at the northwest corner of said unidentified tract and northeast corner of Lot 1 of the Miranda Subdivision, a subdivision of record in

3

Plat Book 5, Page 172 of the Hays County Plat Records, at the southerly southwest corner of said 27.525 acre tract and the southeast corner of a tract called 8.00 acres in said Dillon deed, for an angle point hereof

THENCE with the north line of said Lot 1 and south line of said 8.00 acre tract, S89°07'W for a distance of 494.31 feet to a 5/8" iron pipe found at an angle point

THENCE continuing with said line N61°53'W, at a distance of 3.44 feet passing the northeast corner of a 60' roadway easement reservation as set out on said Miranda Subdivision plat, and continuing on for a total distance of 31.07 feet to the southeast corner of a 0.06 acre roadway easement reserved out of said 8.00 acre tract, for the southwest corner hereof

THENCE through said 8.00 acre tract and with the east line of said 0.06 acre roadway reservation tract, N01°25'W for a distance of 147.45 feet to a capped iron rod set stamped RPLS 3693, at the north corner of said 0.06 acre tract, in the west line of said 8.00 acre tract and east line of Dacy Lane, for an angle point hereof

THENCE with the west line of said 8.00 acre tract and then the west line of said 27.525 acre tract, and with the east line of Dacy Lane, N00°31'W for a distance of 670.43 feet to the POINT OF BEGINNING hereof, and containing 30.458 acres of land, more or less.

Filed for Record in:
Hays County
On: Dec 27,2006 at 09:37A
Document Number:    06038854
Amount:             52.00
Receipt Number - 161933
By,
Olga Martinez, Deputy
Lee Carlisle, County Clerk
Hays County

Austin Data Inc.   HC  ADI10342   HY   2006038854.010

000107

## CONSENT OF SECURED PARTY

STATE OF TEXAS

COUNTY OF HAYS

      WHEREAS, John Kimbro ("Debtor") transferred unto JHX2, Ltd, a Texas limited partnership ("Secured Party"), in a Collateral Transfer of Note, dated December 22, 2006, and recorded in Volume 3078, Page 193, Official Public Records, Hays County, Texas, a promissory noted dated November 15, 2006 in the original principal amount of $360,000.00, executed by Avalon Investments, LLC payable to the order of John Kimbro ("Collateral"), which note is secured by a Deed of Trust of even date therewith to Sarah Sckolwinski, Trustee, upon that certain parcel of land and being more fully described by metes and bounds in Exhibit "A" attached hereto and incorporated herein by reference, which Deed of Trust has been recorded in Volume 3057, Page 201, Official Public Records, Hays County, Texas.

      WHEREAS, Debtor is required to obtain the written consent of Secured Party to accelerate the maturity of the Collateral or take any affirmative collection actions, including without limitation causing the Trustee under the Deed of Trust to post same for foreclosure.

      NOW THEREFORE, Secured Party hereby consents to Debtor accelerating the maturity of the Collateral, including the posting of the Deed of Trust for foreclosure. The Secured Party hereby further consents to Debtor submitting a bid against the Collateral at the foreclosure sale. The Secured Party further ratifies any action previously taken by Debtor in accelerating the maturity of the Collateral and posting the Deed of Trust for foreclosure.

      Executed this 31st day of December, 2007 to be effective December 1, 2007.

JHX2, Ltd, a Texas Limited Partnership
By: JHX2 GP, Inc., its sole general partner


By: _____

Printed Name: John C. Hambrick

Title: President

## ACKNOWLEDGMENT

This instrument was acknowledged before me on this __31__ day of December 2007 by __John C. Hambrick__, __President__ of JHX2, Ltd, a Texas Limited Partnership, on behalf of said partnership.

Notary Public, State of Texas

Barbara J. Carstens
Notary Public
State of Texas
My Comm. Exp. 09-14-2010

EXHIBIT "A"

Bk    Vol   Pg
06085560 DFR   3057   208

Bk    Vol   Pg
80000112 OPR   3310   55

## METES AND BOUNDS DESCRIPTION

### 30.458 ACRES OUT OF THE
### ELISHA PRUETT SURVEY No. 23, ABS. 376
### AND THE
### JESSE B. EAVES SURVEY No. 5, ABS. 166
### AND 0.06 ACRE OUT OF THE
### ELISHA PRUETT SURVEY No. 23, ABS. 376
### HAYS COUNTY, TEXAS

**Tract 1**
ALL THAT CERTAIN PARCEL OR TRACT OF LAND
BEING 30.458 ACRES, MORE OR LESS, OUT OF THE
ELISHA PRUETT SURVEY No. 23, ABSTRACT No. 376
AND THE JESSE B. EAVES SURVEY No. 5, ABSTRACT
No. 166, ALL IN HAYS COUNTY, TEXAS, SAID 30.458
ACRES BEING MORE PARTICULARLY DESCRIBED BY
METES AND BOUNDS AS FOLLOWS:

BEGINNING at a ½" iron rod found in the east line of County Road 205, also known as Dacy Lane, in the west line of that tract called 27.525 acres in a deed to Mary A. C. Kelly-Dillion et vir David M. Dillion, of record in Volume 394, Page 770 of the Hays County Deed Records, at the southwest corner of a tract called 5.00 acres out of said Dillion 27.525 acre tract described in a deed to the Texas Veterans Land Board, of record in Volume 1389, Page 154 of the Hays County Deed Records, for the westerly northwest corner and POINT OF BEGINNING hereof

THENCE through the interior of said 27.525 acre tract and with the south line of said 5.00 acre tract, N89°42'E for a distance of 951.93 feet to a ½" iron rod found, taken to mark the southeast corner of said 5.00 acre tract, for an interior corner hereof

THENCE continuing through the interior of said 27.525 acre tract and with the east line of said 5.00 acre tract N00°06'W for a distance of 202.67 feet to a galvanized bolt found in the north line of said 27.525 acre tract at the

1

000121

southwest corner of a tract called 6.809 acres in a deed to Angel Rodriguez, of record in Volume 2109, Page 798 of the Hays County Deed Records, at the northeast corner of said 5.00 acre tract for the northerly northwest corner hereof

THENCE with the north line of said 27.525 acre tract and south line of said Rodriguez tract, the following 3 calls:

1.) S86°46'E, at a distance of approximately 95 feet passing the east line of the Elisha Pruett Survey and west line of the Jesse B. Eaves survey, and continuing on for a total distance of 120.22 feet to a ½" iron pipe found at an angle point

2.) N79°13'E for a distance of 199.90 feet to a ½" iron pipe found at an angle point

3.) N21°35'E for a distance of 283.95 feet to a 5/8" iron pipe found at the southeast corner of said Rodriguez tract, in the south line of a tract called 10.44 acres in a deed to Charles J. Holley, of record in Volume 691, Page 724 of the Hays County Deed Records, for an angle point hereof

THENCE continuing with the north line of said 27.525 acre tract and the south line of said Holley tract, the following 2 calls:

1.) S66°52'E for a distance of 236.51 feet to a 5/8" iron pipe found at an angle point

2.) N66°03'E for a distance of 328.26 feet to a ½" iron pipe found at the northerly northwest corner of a tract called 12.977 acres in a deed to Michael R. McKenna, of record in Volume 1320, Page 75 of the Hays County Deed Records, at the northeast corner of said 27.525 acre tract for the northeast corner hereof

THENCE with the east line of said 27.525 acre tract and a west line of said McKenna tract, S20°50'E, at a distance of 163 feet pass the apparent center of a natural gas pipeline, and continuing on for a total distance of 348.02 feet to a ½" iron pipe found at an interior corner of said McKenna tract, for the easterly southeast corner of said 27.525 acre tract and easterly southeast corner hereof

THENCE with a northwest line of said McKenna tract and southeast line of said 27.525 acre tract, the following 3 calls:

2

Pg 5

Vol
3310

Bk
OFR

80000112

1.)    S62°30'W, at a distance of approximately 231 feet passing the apparent center of a natural gas pipeline, and continuing on for a total distance of 459.35 feet to a ½" iron pipe found at an angle point

2.)    S37°07'W for a distance of 192.95 feet to a ¾" iron pipe found at an angle point

3.)    S36°26'W, at a distance of 271.78 feet passing the westerly northwest corner of said McKenna tract and the northeast corner of a tract called 7.44 acres in a deed to Leo Sanchez et ux, of record in Volume 732, Page 163 of the Hays County Deed Record, and continuing on said course, now with the north line of said Sanchez tract for an additional 150.64 feet for a total distance of 422.42 feet to a capped iron rod set, stamped RPLS 3693, for an angle point

THENCE continuing with the south line of said 27.525acre tract and with the north line of said Sanchez tract and then the north line of a tract called 5.494 acres in a deed to Mariano Mendoza, of record in Volume 1932, Page 795 of the Hays County Deed Records, S72°53'W, at a distance of approximately 179.2 feet passing the west line of the Eaves Survey and east line of the Pruett Survey, at a distance of 398.16 feet passing a ½" iron rod found at the northwest corner of said Sanchez tract and northeast corner of said Mendoza tract, and continuing on for a total distance of 548.00 feet to a ½" iron pipe found at an angle point

THENCE with an east line of said 27.525 acre tract and a west line of said Mendoza tract, S07°42'E for a distance of 132.90 feet to a ½" iron pipe found in said Mendoza line at a southeast corner of said 27.525 acre tract, at the northeast corner of an unidentified tract (deed reference and name unavailable), for a southeast corner hereof

THENCE with the south line of said 27.525 acre tract and north line of said unidentified tract, the following 2 calls:

1.) S67°25'W for a distance of 108.31 feet to a ½" iron pipe found at an angle point

2.) S89°02'W for a distance of 101.73 feet to a ½" iron pipe found at the northwest corner of said unidentified tract and northeast corner of Lot 1 of the Miranda Subdivision, a subdivision of record in

000123

Plat Book 5, Page 172 of the Hays County Plat Records, at the southerly southwest corner of said 27.525 acre tract and the southeast corner of a tract called 8.00 acres in said Dillion deed, for an angle point hereof

THENCE with the north line of said Lot 1 and south line of said 8.00 acre tract, S89°07'W for a distance of 494.31 feet to a 5/8" iron pipe found at an angle point

THENCE continuing with said line N61°53'W, at a distance of 3.44 feet passing the northeast corner of a 60' roadway easement reservation as set out on said Miranda Subdivision plat, and continuing on for a total distance of 31.07 feet to the southeast corner of a 0.06 acre roadway easement reserved out of said 8.00 acre tract, for the southwest corner hereof

THENCE through said 8.00 acre tract and with the east line of said 0.06 acre roadway reservation tract, N01°25'W for a distance of 147.45 feet to a capped iron rod set stamped RPLS 3693, at the north corner of said 0.06 acre tract, in the west line of said 8.00 acre tract and east line of Dacy Lane, for an angle point hereof

THENCE with the west line of said 8.00 acre tract and then the west line of said 27.525 acre tract, and with the east line of Dacy Lane, N00°31'W for a distance of 670.43 feet to the POINT OF BEGINNING hereof, and containing 30.458 acres of land, more or less.

Filed for Record in:
Hays County
On: Nov 21,2006 at 03:42P
Document Number: 06035560
Amount: 56.00
Receipt Number 160033
By,
Rebecca Hall, Deputy
Lee Carlisle, County Clerk
Hays County

GF# 614670-ER

Charge & Return to: Gracy Title Co.
10435 Burnet Road #108
Austin, TX 78758

## RELEASE OF COLLATERAL TRANSFER OF NOTE

STATE OF TEXAS

COUNTY OF HAYS

THAT the undersigned, of the County of Travis and State of Texas, for valuable consideration, hereby RE-TRANSFERS, ASSIGNS AND CONVEYS unto John Kimbro the promissory note, and all liens, rights, titles, equities and interests securing the same, described as follows, to-wit:

> That promissory noted dated November 15, 2006 in the original principal amount of $360,000.00, executed by Avalon Investments, LLC payable to the order of John Kimbro ("Collateral"), which note is secured by a Deed of Trust of even date therewith to Sarah Sckolwinski, Trustee, upon that certain parcel of land and being more fully described by metes and bounds in Exhibit "A" attached hereto and incorporated herein by reference, which Deed of Trust has been recorded in Volume 3057, Page 201, Official Public Records, Hays County, Texas.

and being the same promissory note and liens transferred to the undersigned by Collateral Transfer of Note dated December 22, 2006, executed by John Kimbro, recorded in Volume 3078, Page 193, Official Public Records, Hays County, Texas.

But it is agreed and understood that this instrument shall in no way release John Kimbro from any of the obligations and liabilities under that certain promissory note in the original principal sum of $288,000.00 dated December 22, 2006, executed by John Kimbro and payable to the order of JHX2, Ltd, a Texas limited partnership, which said promissory note was described in, and secured by, the Collateral Transfer of Note above described, nor shall this instrument release or impair any other security for said promissory note.

Executed this 31st day of December 2007 to be effective December 1, 2007.

JHX2, Ltd, a Texas Limited Partnership
By: JHX2 GP, Inc., its sole general partner

By: _____

Printed Name: John C. Hambrick

Title: President

## ACKNOWLEDGMENT

This instrument was acknowledged before me on this 31 day of December 2007 by John C. Hambrick President of JHX2, Ltd, a Texas Limited Partnership, on behalf of said partnership.

Barbara J. Carstens
Notary Public
State of Texas
My Comm. Exp. 03-14-2010

Notary Public, State of Texas

## EXHIBIT "A"

## METES AND BOUNDS DESCRIPTION

30.458 ACRES OUT OF THE
ELISHA PRUETT SURVEY No. 23, ABS. 376
AND THE
JESSE B. EAVES SURVEY No. 5, ABS. 166
AND 0.06 ACRE OUT OF THE
ELISHA PRUETT SURVEY No. 23, ABS. 376
HAYS COUNTY, TEXAS

**Tract 1**
ALL THAT CERTAIN PARCEL OR TRACT OF LAND
BEING 30.458 ACRES, MORE OR LESS, OUT OF THE
ELISHA PRUETT SURVEY No. 23, ABSTRACT No. 376
AND THE JESSE B. EAVES SURVEY No. 5, ABSTRACT
No. 166, ALL IN HAYS COUNTY, TEXAS, SAID 30.458
ACRES BEING MORE PARTICULARLY DESCRIBED BY
METES AND BOUNDS AS FOLLOWS:

BEGINNING at a ½" iron rod found in the east line of County Road 205, also known as Dacy Lane, in the west line of that tract called 27.525 acres in a deed to Mary A. C. Kelly-Dillion et vir David M. Dillion, of record in Volume 394, Page 770 of the Hays County Deed Records, at the southwest corner of a tract called 5.00 acres out of said Dillion 27.525 acre tract described in a deed to the Texas Veterans Land Board, of record in Volume 1389, Page 154 of the Hays County Deed Records, for the westerly northwest corner and POINT OF BEGINNING hereof

THENCE through the interior of said 27.525 acre tract and with the south line of said 5.00 acre tract, N89°42'E for a distance of 951.93 feet to a ½" iron rod found, taken to mark the southeast corner of said 5.00 acre tract, for an interior corner hereof

THENCE continuing through the interior of said 27.525 acre tract and with the east line of said 5.00 acre tract N00°06'W for a distance of 202.67 feet to a galvanized bolt found in the north line of said 27.525 acre tract at the

1

000128

Vol
3310

Bk
OPR

80000113

southwest corner of a tract called 6.809 acres in a deed to Angel Rodriguez, of record in Volume 2109, Page 798 of the Hays County Deed Records, at the northeast corner of said 5.00 acre tract for the northerly northwest corner hereof

THENCE with the north line of said 27.525 acre tract and south line of said Rodriguez tract, the following 3 calls:

1.)     S86°46'E, at a distance of approximately 95 feet passing the east line of the Elisha Pruett Survey and west line of the Jesse B. Eaves survey, and continuing on for a total distance of 120.22 feet to a ½" iron pipe found at an angle point

2.)     N79°13'E for a distance of 199.90 feet to a ½" iron pipe found at an angle point

3.)     N21°35'E for a distance of 283.95 feet to a 5/8" iron pipe found at the southeast corner of said Rodriguez tract, in the south line of a tract called 10.44 acres in a deed to Charles J. Holley, of record in Volume 691, Page 724 of the Hays County Deed Records, for an angle point hereof

THENCE continuing with the north line of said 27.525 acre tract and the south line of said Holley tract, the following 2 calls:

1.) S66°52'E for a distance of 236.51 feet to a 5/8" iron pipe found at an angle point

2.) N66°03'E for a distance of 328.26 feet to a ½" iron pipe found at the northerly northwest corner of a tract called 12.977 acres in a deed to Michael R. McKenna, of record in Volume 1320, Page 75 of the Hays County Deed Records, at the northeast corner of said 27.525 acre tract for the northeast corner hereof

THENCE with the east line of said 27.525 acre tract and a west line of said McKenna tract, S20°50'E, at a distance of 163 feet pass the apparent center of a natural gas pipeline, and continuing on for a total distance of 348.02 feet to a ½" iron pipe found at an interior corner of said McKenna tract, for the easterly southeast corner of said 27.525 acre tract and easterly southeast corner hereof

THENCE with a northwest line of said McKenna tract and southeast line of said 27.525 acre tract, the following 3 calls:

2

1.)     S62°30'W, at a distance of approximately 231 feet passing the apparent center of a natural gas pipeline, and continuing on for a total distance of 459.35 feet to a ½" iron pipe found at an angle point

2.)     S37°07'W for a distance of 192.95 feet to a ¾" iron pipe found at an angle point

3.)     S36°26'W, at a distance of 271.78 feet passing the westerly northwest corner of said McKenna tract and the northeast corner of a tract called 7.44 acres in a deed to Leo Sanchez et ux, of record in Volume 732, Page 163 of the Hays County Deed Record, and continuing on said course, now with the north line of said Sanchez tract for an additional 150.64 feet for a total distance of 422.42 feet to a capped iron rod set, stamped RPLS 3693, for an angle point

THENCE continuing with the south line of said 27.525acre tract and with the north line of said Sanchez tract and then the north line of a tract called 5.494 acres in a deed to Mariano Mendoza, of record in Volume 1932, Page 795 of the Hays County Deed Records, S72°53'W, at a distance of approximately 179.2 feet passing the west line of the Eaves Survey and east line of the Pruett Survey, at a distance of 398.16 feet passing a ½" iron rod found at the northwest corner of said Sanchez tract and northeast corner of said Mendoza tract, and continuing on for a total distance of 548.00 feet to a ½" iron pipe found at an angle point

THENCE with an east line of said 27.525 acre tract and a west line of said Mendoza tract, S07°42'E for a distance of 132.90 feet to a ½" iron pipe found in said Mendoza line at a southeast corner of said 27.525 acre tract, at the northeast corner of an unidentified tract (deed reference and name unavailable), for a southeast corner hereof

THENCE with the south line of said 27.525 acre tract and north line of said unidentified tract, the following 2 calls:

1.) S67°25'W for a distance of 108.31 feet to a ½" iron pipe found at an angle point

2.) S89°02'W for a distance of 101.73 feet to a ½" iron pipe found at the northwest corner of said unidentified tract and northeast corner of Lot 1 of the Miranda Subdivision, a subdivision of record in

3

000130

Plat Book 5, Page 172 of the Hays County Plat Records, at the southerly southwest corner of said 27.525 acre tract and the southeast corner of a tract called 8.00 acres in said Dillion deed, for an angle point hereof

THENCE with the north line of said Lot 1 and south line of said 8.00 acre tract, S89°07'W for a distance of 494.31 feet to a 5/8" iron pipe found at an angle point

THENCE continuing with said line N61°53'W, at a distance of 3.44 feet passing the northeast corner of a 60' roadway easement reservation as set out on said Miranda Subdivision plat, and continuing on for a total distance of 31.07 feet to the southeast corner of a 0.06 acre roadway easement reserved out of said 8.00 acre tract, for the southwest corner hereof

THENCE through said 8.00 acre tract and with the east line of said 0.06 acre roadway reservation tract, N01°25'W for a distance of 147.45 feet to a capped iron rod set stamped RPLS 3693, at the north corner of said 0.06 acre tract, in the west line of said 8.00 acre tract and east line of Dacy Lane, for an angle point hereof

THENCE with the west line of said 8.00 acre tract and then the west line of said 27.525 acre tract, and with the east line of Dacy Lane, N00°31'W for a distance of 670.43 feet to the POINT OF BEGINNING hereof, and containing 30.458 acres of land, more or less.

Filed for Record in:
Hays County
On: Nov 21,2006 at 03:42P
Document Number: 06035560
Amount: 56.00
Receipt Number - 160033
by,
Rebecca Hall, Deputy
Lee Carlisle, County Clerk
Hays County

GF# 614670-eR

Charge & Return to: Gracy Title Co.
10435 Burnet Road #106
Austin, TX 78758

# SUBSTITUTE TRUSTEE'S DEED

Date: January 1, 2008

Substitute Trustee: Joseph J. Malone

**Deed of Trust:**

Date: November 15, 2007

Grantor: Avalon Investments, LLC

Trustee: Sarah Schorwinski

Beneficiary: John Kimbro

Recording Information: Volume 3057, Page 201, Official Public Records, Hays County, Texas

Property: Being 30.453 acres of land, more or less, out of the ELISHA PRUETT SURVEY, more particularly described by metes and bounds in Exhibit "A" attached hereto.

Note:

Date: November 15, 2007

Amount: $360,000

Debtor: Avalon Investments, LLC

Lender: John Kimbro

Holder: John Kimbro

Date of Sale (first Tuesday of the month): January 1, 2008

Time of Sale: 10:10 a.m.

Place of Sale: Hays County in San Marcos, Texas: Hopkins Street Entrance of the Hays County Courthouse.

Buyer: John Kimbro

Buyer's Mailing Address: P.O. Box 1210, Kyle, Texas 78640

000116

Amount of Sale: $372,391.88

Grantor has defaulted in performing the obligations of the Deed of Trust. Holder of the Note has directed Substitute Trustee to enforce the trust.

Notices stating the time, place and terms of the sale of the Property were posted and filed and as shown by the affidavit attached to this deed and incorporated in it by this reference Holder/Lender either personally or by agent served notice of the sale to each debtor, as required by the Texas Property Code. In accordance with that statute and this Deed of Trust, Substitute Trustee sold the Property to Buyer, who was the highest bidder at the public auction, for the Amount of the Sale. The sale was made on the Date of Sale, began at the Time of Sale, and was conducted by 1:00 p.m.

Substitute Trustee, subject to any prior liens and other exceptions to conveyance and warranty in the Deed of Trust and for the Amount of Sale paid by Buyer as consideration, grants sells and conveys the Property to Buyer, together will all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Buyer and Buyer's heirs, successors and assigns forever. Substitute Trustee binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Buyer and Buyer's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the prior liens and other exceptions to conveyance and warranty in the Deed of Trust.

_____
Joseph J. Malone, Substitute Trustee

### Acknowledgement

STATE OF TEXAS

COUNTY OF HAYS

This instrument was acknowledged before me on this 2nd day of January 2008, by Joseph J. Malone, Substitute Trustee

_____
Notary Public, State of Texas

ALANA SCOTT
NOTARY PUBLIC
State of Texas
Comm. Exp. 11-16-2010

000117